[L. A. No. 21238.   In Bank.   Oct. 18, 1950.]

SOUTHERN CALIFORNIA JOCKEY CLUB, INC. (a Corporation), Appellant, v. CALIFORNIA HORSE RACING BOARD et al., Respondents.

168

Athearn, Chandler & Farmer, Hoffman & Angell, F. G. Athearn and Leigh Athearn for Appellant.

Fred N. Howser, Attorney General, Kenneth E. Lynch, Assistant Attorney General, and Howard S. Goldin, Deputy Attorney General, for Respondents.

Gerald H. Hagar, J. D. Strauss, and Joseph W. Paulucci, Amici Curiae on behalf of Respondents.

CARTER, J.—Proceeding under section 19480.5 of the Business and Professions Code, plaintiff applied to the California Horse Racing Board for a determination that the purposes of the horse racing law (Bus. & Prof. Code, §§ 19420 et seq.) and public interest would be served by the construction by it of a track for horse race meetings at Puente, Los Angeles County, California. The application was denied, and plaintiff thereupon presented a petition for a writ of mandate to the superior court to compel the board to issue a license to it for such purpose, and that court agreed with the board. Plaintiff now asserts that the licensing provisions of the horse racing law are invalid in that they constitute an unlawful delegation of legislative power to the board without adequate standards (Cal. Const., arts. III and IV, § 1); that improper evidence was admitted before the board; that the evidence was insufficient to sustain its determination or that of the superior court; and that the board acted irregularly.

Section 19480.5 under which plaintiff made its application provides: "The board shall not issue a license to conduct a horse racing meeting at any place, inclosure, or track, not used for horse racing meetings prior to July 1, 1941, unless prior to the beginning of the construction or preparation of such place, inclosure, or track for horse racing meetings, the board, upon application in such form as it may require, has determined that conducting horse racing meetings at such place will be *in the public interest and will subserve the pur-*

*poses of this chapter.''* [Emphasis added.] This section was added to the horse racing law in 1941 (Stats. 1941, ch. 1248, § 3, p. 3129). It is not questioned that that section lays down adequate standards to govern the action of the board, but plaintiff challenges the broad provision contained in the preceding section, which provision reads: ''The board may issue to any person who makes application therefor in writing, who has complied with the provisions of this chapter and who makes the deposit to secure payment of the license fee required by this article a license to conduct a horse racing meeting in accordance with this chapter at the place, inclosure or track specified in the application.'' (Bus. & Prof. Code, § 19480.)

The horse racing board is in a different category than other administrative or executive agencies with respect to the delegation of legislative power to it. A horse racing act ·was passed by the Legislature in 1933 (Stats. 1933, pp. 1127, 2046), wherein it was provided that it should be effective ''upon the adoption of a constitutional amendment ratifying its provisions.'' (Id., § 19.) In June, 1933, a constitutional amendment was adopted which provides: ''The Legislature may provide for the regulation of horse races and horse race meetings and wagering on the results thereof. The provisions of an act entitled 'An act to provide for the regulation and licensing of horse racing, horse race meetings, and the wagering on the results thereof; to create the California Horse Racing Board for the regulation, licensing and supervision of said horse racing and wagering thereon; to provide penalties for the violation of the provisions of this act, and to provide that this act shall take effect upon the adoption of a constitutional amendment ratifying its provisions,' *are hereby confirmed, ratified, and declared to be fully and completely effective*; provided, that said act may at any time be amended or repealed by the Legislature.'' [Emphasis added.] (Cal. Const., art. IV, § 25a.) In *Sandstrom* v. *California Horse Racing Board,* 31 Cal.2d 401 [189 P.2d 17, 3 A.L.R.2d 90], this court considered the power of the board to revoke or suspend the license of a horse trainer licensed under the horse racing law. In that case petitioner's license had been suspended for a violation of a rule adopted by the board, and one of the contentions of petitioner was that ''insofar as that rule is based on the statutory grant of power to the board to prescribe rules, regulations and conditions under which horse racing is conducted . . . it is an unconstitutional delegation

of legislative authority.'' In answer to that contention, this court, after reciting the adoption of the 1933 act and constitutional amendment, stated: ''The *effect* of this constitutional amendment as here material is that it expressly 'confirmed, ratified, and declared to be fully and completely effective' the *legislative grant of power to the California Horse Racing Board.* That the Constitution may permit the Legislature to delegate powers may not be doubted. The Constitution may even authorize the Legislature to confer additional powers which are cognate and germane to its purposes upon a .constitutional board or commission, and may further provide that such powers are unlimited by any other provisions of the Constitution. (See Const., art. XII, § 22; *Pacific Telephone etc. Co.* v. *Eshleman,* 166 Cal. 640 [137 P. 1119, Ann.Cas. 1915C 822, 50 L.R.A.N.S. 652].) The continuance of the grant of power into section 19561, Business and Professions Code, did not affect its status as previously ratified and confirmed. (See Bus. & Prof. Code, § 2.) *The delegation of authority* here considered has *constitutional* support.'' [Emphasis added.] That case is controlling here on the subject of delegation of legislative power, for there is no rational difference between the delegation there of rule making power, and that presented here, that is, that insufficient standards were fixed by the Legislature as the basis upon which the board could grant or deny a license.

Plaintiff argues, however, that the 1933 statute did not give such broad powers to the board as are given by the present provisions of the Business and Professions Code. With that we cannot agree. The 1933 act, like the present one, prohibits the conduct of horse race meetings where wagering is permitted without obtaining a license. (Stats. 1933, p. 1127, § 1; Bus. & Prof. Code, § 19560.) There is separate provision for licensing owners, riders, trainers, etc. (as distinguished from track operators or conductors of meetings) and *such* licenses ''shall be subject to revocation and no person shall be eligible to, or permitted to participate in such racing unless so licensed, and only during the time such license remains unrevoked. No qualified person shall be refused such license, nor shall such license be revoked without just cause.'' (Stats. 1933, p. 1127, § 3, second paragraph.) Thus, those provisions are not here applicable as we are dealing with licenses for race meetings and places of meetings. It is next provided with regard to a license of the character here involved, that:

"*Upon the award* to any applicant and upon payment of the license fees as hereinafter prescribed, the board shall issue a license which shall permit the licensee, during the dates awarded to such applicant and for which license fees shall have been paid, to conduct at its track a race meeting, or meetings, and wagering on the results thereof, *as herein provided.*

"All licenses provided to be granted under the provisions of this act, including those granted pursuant to the provisions of section 3 hereof, shall be subject to all rules, regulations and conditions from time to time prescribed by the board and shall contain such conditions as shall be deemed by said board necessary or desirable for the purposes of this act.

"Such license shall be subject to suspension or revocation by the board in any case where the board shall have reason to believe that any condition of its license has not been complied with or any law or any rule or regulation of such board shall have been broken or violated. . . ." [Emphasis added.] (Stats, 1933, p. 1127, § 9.) Plainly, the first paragraph above quoted refers to the mere mechanical issuance of the license certificate *after* the award has been made, that is, after there has been a determination that the applicant is entitled to a license. Naturally such terms are mandatory for nothing is left to do following such a finding except the ministerial act of issuing the license. Moreover, the words "as herein provided" refer to an "award" as provided in the act. Hence that section (9) does not apply to the situation here involved which concerns the making of a determination or an award that an applicant should or should not have a license. This is further demonstrated when we turn to section 11 of the 1933 act which contains provisions similar to section 19480 of the Business & Professions Code, *supra,* and here pertinent. Section 11 reads: "Upon the filing of an application, in writing, for a license, as herein provided, if the same should be in accordance with this act, and upon the payment of the license fee hereinafter provided for, it shall be *within the power of the board* to issue a license to the applicant to conduct a horse race meeting in accordance with the provisions of the act at the place, enclosure or track specified in the application; and in counties of the first and second classes, as hereinabove defined, no license shall be granted to conduct a horse race meeting upon a track less than one mile in circumference and/or length, except that the board may in its discretion grant licenses to county fairs and to rodeos to conduct horse race

meetings upon tracks less than one mile in circumference and/or length, in counties of the third class licenses may be granted in the discretion of the board to conduct race meetings on tracks of less than a mile in circumference and/or length." [Emphasis added.] (Stats. 1933, p. 1127, § 11.) ▮ There is just as much a lack of standard for issuance of a license in the foregoing provision of the 1933 act as there is in section 19480 of the Business and Professions Code, and the words "shall be within the power of the board" contained in the 1933 act are no more or less mandatory or permissive than the word "may" in section 19480 of the Business and Professions Code. The two expressions mean substantially the same thing. For illustration, it is said that "may" means "to have power" (*National Automobile etc. Co.* v. *Garrison*, 76 Cal.App.2d 415 [173 P.2d 67] ; *Robison* v. *Payne*, 20 Cal. App.2d 103 [66 P.2d 710]), and "may" may be either mandatory or permissive depending upon the circumstances. (See *Robison* v. *Payne*, *supra*; *California Trust Co.* v. *Bennett*, 33 Cal.2d 694 [204 P.2d 324] ; *Carter* v. *Seaboard Finance Co.*, 33 Cal.2d 564 [203 P.2d 758] ; *Hollman* v. *Warren*, 32 Cal.2d 351 [196 P.2d 562] ; *Department of Social Welfare* v. *Kern County*, 29 Cal.2d 873 [180 P.2d 1] ; *Housing Authority* v. *Superior Court*, 18 Cal.2d 336 [115 P.2d 468].) ▮ Moreover, it must be remembered that the codification of the horse racing law (placing it in the Business and Professions Code) was presumably not intended as a change in the law. (Bus. & Prof. Code, § 2 ; *Sandstrom* v. *California Horse Racing Board*, *supra*.) ▮ We conclude, therefore, that section 19480 of the Business and Professions Code made no substantial change in the 1933 statute on the subject here involved, and since the 1933 act was confirmed and ratified by the constitutional amendment, the attack made on its validity cannot stand. (*Sandstrom* v. *California Horse Racing Board*, *supra*.)

The board found, pursuant to section 19480.5 of the Business and Professions Code, that applicant (plaintiff) had failed to show that the conduct of horse race meetings at Puente would be in the public interest and subserve the purpose of the horse racing law. The trial court decided the case upon the record made before the board and found that its finding was supported by "substantial evidence." Plaintiff challenges these findings.

Plaintiff asserts that the trial court did not weigh the evidence; that, therefore, this court must weigh the evidence

and *Moran* v. *Board of Medical Examiners,* 32 Cal.2d 301 [196 P.2d 20], is not controlling. There are two answers to that contention. First, it clearly appears from the findings that the court did weigh the evidence, although the memorandum opinion of the trial judge might point to the contrary. The findings control. There is no distinction between this case and *Moran* v. *Board of Medical Examiners,* 32 Cal.2d 301 [196 P.2d 20], where it was held that the appellate court would not reweigh the evidence in reviewing the findings of a trial court on a determination by a statewide administrative agency; and that such findings would be given all the benefits accorded them in other proceedings. Second, even if it be assumed that the trial court did not reweigh the evidence, it should not have done so in a case such as this, where it was reviewing the denial of an application for a license for a business whose regulation is a proper subject of the police power as distinguished from the revocation or suspension of a license. This rule was announced in *McDonough* v. *Goodcell,* 13 Cal. 2d 741 [91 P.2d 1035, 123 A.L.R. 1205], where this court said: "The legislature has the power to vest in a public officer the discretion to deny an application for a permit to engage in a business subject to regulation when prerequisite facts do not exist. But such a discretion must be exercised within legal bounds. Those bounds are generally that the discretion of the administrative officer or board may not be exercised arbitrarily, capriciously, fraudulently, or without a factual basis sufficient to justify the refusal. . . . A survey of the foregoing authorities discloses that it is the settled general rule of law in this state that where the legislature has by statute clothed an administrative officer with power to ascertain the facts with reference to the fitness of an applicant for a permit to engage in a business subject to regulation under the police power and has vested in such officer the discretion, based on the facts ascertained, to grant or deny a permit to engage in such business the courts will not interfere with the exercise of such discretion except in the case of an abuse thereof. There may be modifications of this general rule under special circumstances not here present, as will hereinafter be noted.

"The question here is whether the commissioner abused his discretion in denying the permit to the petitioners. Such abuse of discretion would appear if he acted arbitrarily, capriciously, or fraudulently. No claim can properly be made that he acted capriciously or fraudulently. And he acted

arbitrarily only in the event there was no sufficient factual basis for his conclusions.

"The testimony before the commissioner was voluminous and highly conflicting . . .

"Unquestionably the testimony before the commissioner would sustain a conclusion either way upon the issue of the good moral character and fitness of the petitioners to engage in the bail bond business in San Francisco. If the trial had been before a court the evidence was sufficient to support findings either way or was sufficient to support a verdict either way on the issue. With this state of the record our inquiry on this phase of the case is at an end, for it cannot be said that there was not a sufficient factual basis for the conclusion of the commissioner and therefore he did not act arbitrarily or otherwise abuse his discretionary power in denying the permit." Those views have been consistently approved. (See *Dierssen* v. *Civil Service Commission*, 43 Cal.App.2d 53, 60 [110 P.2d 513]; *Newport* v. *Caminetti*, 56 Cal.App.2d 557 [132 P.2d 897]; *Wallace* v. *Board of Education*, 63 Cal.App.2d 611 [147 P.2d 8]; *Housman* v. *Board of Medical Examiners*, 84 Cal.App.2d 308 [190 P.2d 653]; *McDonough* v. *Garrison*, 68 Cal.App.2d 318 [156 P.2d 983]; *Glick* v. *Scudder*, 69 Cal.App.2d 717 [160 P.2d 90].) And the rule was not changed by statute as is evident from the wording of section 10945 of the Code of Civil Procedure.

We therefore hold, that in a case such as this, the trial court should not reweigh the evidence, and its sole function is, to determine from a review of the record, whether there is sufficient evidence to sustain the ruling of the board. If the trial court should hold the evidence insufficient, and this holding is attacked on appeal, the court to which the appeal is taken must review the record and determine the sufficiency of the evidence. If the evidence is found to be sufficient, the ruling of the board must be sustained.

Plaintiff urges that there is not sufficient evidence to support the finding of the board against it; that "improper" evidence was received by the board; and that competent evidence offered by plaintiff was rejected.

Dealing first with the last mentioned contention, plaintiff claims that "improper" evidence was admitted before the board and a transcript of it was submitted to the court, that is, evidence by Santa Anita and Hollywood race tracks in Los Angeles County, that they would suffer an "economic

detriment" if another track was authorized in the county; that it is not the purpose of section 19480.5 under which new tracks could be limited, to protect existing tracks from competition or preserve a monopoly for them. It will be noted from the wording of section 19480.5, however, that no new race tracks may be constructed unless it is determined that such tracks will be in the public interest and will promote the purposes of the horse racing law. Defendants concede that it is not the function of the board to protect existing tracks from competition. In its memorandum opinion the trial court said: "Nevertheless, eliminating from consideration testimony concerning the economic interest of the existing tracks, there is still substantial evidence upon which to sustain the Board's determination. Even if there be some error in the record, the court should follow the general principle enunciated in Article VI, section 4½ of the Constitution, to-wit, sustain the trial body where the error complained of has not resulted in a miscarriage of justice." ■ Thus its conclusion was that without such evidence there was sufficient evidence to support the board's decision. Moreover, it is presumed on appeal that the court, sitting without a jury, did not base its finding on irrelevant evidence where there is competent evidence to support it. (*Brock* v. *Fouchy,* 76 Cal.App.2d 363 [172 P.2d 945]; *Cordi* v. *Garcia,* 56 Cal.App.2d 584 [132 P.2d 887].) ■ There being competent evidence to support the judgment without such "improper" evidence, and the court not having based its findings on the latter, it is not important that plaintiff's offer of proof in rebuttal thereof was denied by the board.

■ Furthermore, since the proceeding in the trial court must be considered as only a hearing where the record before the board is examined for the purpose of determining the sufficiency of the evidence, rather than a limited trial de novo (see *McDonough* v. *Goodcell* and discussion *supra*), then the applicable rule is, that the admission of irrelevant or incompetent evidence by the board is not ground to annul its action if there is sufficient competent evidence to support its determination. (See *Maryland Casualty Co.* v. *Industrial Acc. Com.,* 178 Cal. 491 [173 P. 993]; *Mesmer & Rice* v. *Industrial Acc. Com.,* 178 Cal. 466 [173 P. 1099]; *Mary Len Mine* v. *Industrial Acc. Com.,* 64 Cal.App.2d 153 [148 P.2d 106]; *Tagg Bros. & Moorhead* v. *United States,* 280 U.S. 420 [50 S.Ct. 220, 74 L.Ed. 524].)

■ There is ample evidence to support the determination

of the board and trial court. Two witnesses representing an improvement association testified that the transportation facilities and traffic conditions would be adversely affected by a track at Puente, and that added fire protection would be necessary. A resolution by the California Thoroughbred Breeders' Association representing 95 per cent of the breeders of thoroughbred horses in the state was received in evidence. It declared that the proposed track would reduce the standard of the racing and breeding industry in the state and curtail the revenue to the state. There was also received in evidence a resolution by the Western Fair Association, comprising 74 nonprofit fairs in California, opposing the track, asserting that it would be injurious to such nonprofit fairs and hence to agriculture. There is other evidence of a like character in the record. There is, however, evidence that the saturation point for race tracks in Los Angeles County has not been reached, but such evidence created nothing more than a conflict. ▉▉▉ The credibility of the witnesses and weight of the evidence cannot be considered on this appeal. ▉▉▉ It is clear from the wording of section 19480.5 that the applicant has the burden of proving, at least, that public interest and the purposes of the act would not be detrimentally affected by the proposed new track. There is considerable discussion by the parties as to whether the applicant must affirmatively show that the public interest would be benefited or merely that it would not suffer, but it is not necessary to pass upon that point. ▉▉▉ Thus it was for the board to determine whether plaintiff's evidence was such that the burden had been met. This is especially true where most of the evidence consists of opinions, and the issues involved—public interest and purposes of the act—are general and incapable of exact definition. Indeed, plaintiff states in its brief: ''A moment's reflection upon the very nature of the determination that the board was required to make shows that such determination must be predicated, not upon provable concrete facts, but upon opinion evidence exclusively.'' In such a case, wide discretion is necessarily vested in the fact-finder.

▉▉▉ Plaintiff argues that the board and trial court failed to apply the standard established by section 19480.5, asserting that the words ''public interest'' used therein related only to the purposes to be served by the horse racing law. Be that as it may, the finding of the board was in the language of the statute. It reads: ''That the applicant has failed to show

that the conducting of horse racing meetings at the proposed Puente track would be in the public interest and would subserve the purposes of the California Horse Racing Act and that therefore said application is hereby denied." Likewise the court's finding was sufficient. There is no basis, therefore, for the assumption that either the board or the trial court applied the wrong standard or test. On the contrary, the presumption is the other way. (Code Civ. Proc., § 1963(15).)

■ Finally, it is urged that the board acted irregularly in reaching its decision in that one of the board members telephoned his vote to a meeting of the board at which the two other members were present, one of whom dissented. Assuming that there must have been present at a meeting at which the matter was decided by the board, the members necessary to make a decision by a majority of the board, from all that appears, such was done. The meeting at which only two members were present was on September 17, 1948. The written decision of the board, dated September 21, 1948, recites: "The Matter of the Application of.the Southern California Jockey Club, Inc., came on for hearing; evidence was introduced by the applicant and the objectors; the matter was briefed by said applicant and objectors and by the Board submitted.

"It is now held as follows:

"That the applicant has failed to show that the conducting of horse racing meetings at the proposed Puente track would be in the public interest and would subserve the purposes of the California Horse Racing Act and that therefore said application is hereby denied." It is signed by two members of the board, and the third member's dissent was filed with it.

The judgment is affirmed.

Gibson, C. J., Shenk, J., and Schauer, J., concurred. Spence, J., concurred in the judgment.

TRAYNOR, J., Dissenting.—The trial court found that the determination of the board was supported by "substantial evidence and by the weight of the evidence." The majority opinion herein affirms the decision of the trial court on the ground that there was substantial evidence to support the determinations of the board and of the trial court. It holds that if plaintiff was entitled to a finding by the trial court that the board's decision was or was not supported by the weight of the evidence, this court discharges its duty to review that decision by

determining whether there was substantial evidence to support it. As an alternative ground for decision it holds that plaintiff was only entitled to a determination by the trial court whether there was substantial evidence to support the decision of the board, since denial rather than revocation of a license was involved. For the reasons set forth in my dissenting opinion in *Moran* v. *Board of Medical Examiners,* 32 Cal.2d 301, 315, 317 [196 P.2d 20], I cannot agree that if the issue before the trial court was whether the decision of the board was supported by the weight of the evidence, our duty of review is discharged by discovering substantial evidence to support the trial court. Manifestly, if we must determine whether the trial court correctly decided the issue before it, namely, whether the board's finding was supported by the *weight* of the evidence, we cannot do so without reviewing the entire record to see where the *weight* of the evidence lies. In affirming the judgment on the alternate ground the majority opinion abandons the position previously taken by the majority of this court that the findings of fact by state-wide administrative agencies must be independently reexamined by the trial court to determine whether they are supported by the weight of the evidence. (*Moran* v. *Board of Medical Examiners,* 32 Cal.2d 301 [196 P.2d 20] ; *Dare* v. *Board of Medical Examiners,* 21 Cal.2d 790 [136 P.2d 304].)

The majority opinion seeks to explain its abandonment of the rule of these cases by establishing a distinction between cases such as this, in which the action reviewed consists of the *denial* of a license or permit, and cases in which the action reviewed consists of the *revocation* or *suspension* of a previously granted license. Notwithstanding that in either instance the result of the administrative action is to deprive the petitioner of the opportunity to carry on a lawful business, profession, or occupation, the majority opinion approves the doctrine of *McDonough* v. *Goodcell,* 13 Cal.2d 741, 752-753 [91 P.2d 1035, 123 A.L.R. 1205], that there is a sufficient practical difference between the two types of action to merit the application of divergent theories of judicial review. It is held that if the agency revokes a license upon a specific finding of fact, the action must be reversed by the reviewing court if the finding is not supported by the weight of the evidence, but if on an identical finding it merely denies a license or permit, its action may be reversed only if there is no substantial evidence to support it.

In my opinion, the failure to overrule the Dare and Moran cases is not justified by the approval of a double standard for a single problem. It is apparent that there is no practical difference between the denial of a license, as in *McDonough* v. *Goodcell, supra,* to a petitioner who has for thirty years conducted the business for which the license is sought, and the revocation of a license under which the petitioner may have operated his business. It has been aptly stated that "the majority position has led to an unsound distinction between suspending a professional license and refusing to grant a license where the result in each instance is to eject a person from a business in which he has engaged for a number of years . . . The position taken in the majority opinion can lead only to further unfortunate complications in this field of the law." (Dissenting opinion of Gibson, C. J., in *Laisne* v. *State Board of Optometry,* 19 Cal.2d 831, 869 [123 P.2d 457].)

The application of the present decision to the Horse Racing Act demonstrates the wisdom of that prophecy. "All persons participating in or having to do with the racing of horses" must obtain licenses from the board. (Bus. & Prof. Code, § 19510.) Such licenses are valid only for the calendar year for which they are issued and new licenses must be secured annually. (Bus. & Prof. Code, § 19511.) Licenses may be refused or revoked only for just cause. (Bus. & Prof. Code, § 19513.) Assume that during the calendar year the board after notice and hearing finds that there is just cause for the revocation of the license of a horse owner, rider, or trainer, and orders his license revoked. He petitions for writ of mandate and the trial court grants the peremptory writ for the reason that the board's finding, although supported by substantial evidence, is not supported by the weight of the evidence. Thereafter, petitioner applies at the close of the calendar year for his license, but the board upon the same evidence and upon the same finding upon which its previous action was predicated, refuses to issue the license. The peremptory writ must now be denied for the reason that the finding is supported by substantial evidence. Thus, although the same finding is made in each case upon the same evidence under the same statute and "the result in each instance is to eject a person from a business in which he has engaged for a number of year," the majority opinion apparently finds no inconsistency between the types of review that it prescribes.

The present case is the first since *McDonough* v. *Goodcell* in which this court has approved the doctrine of that case.

The decisions of the majority of this court have stated the rule to be that in the case of a state-wide agency the court must exercise an independent judgment on the facts and re-weigh the evidence in each case without qualification or limitation· to those cases in which only revocation or suspension of a license is involved. *McDonough* v. *Goodcell* has occasionally been adhered to by the District Courts of Appeal on the theory that "whatever our view may be as to the correctness of this distinction, as an intermediate court we are bound by this holding of the Supreme Court." (*McDonough* v. *Garrison*, 68 Cal.App.2d 318, 337 [156 P.2d 983] [see, also, dissenting opinion of Ward, J., at 348-352] ; *Housman* v. *Board of Medical Examiners*, 84 Cal.App.2d 308, 315, 319 [190 P.2d 653]·; *Glick* v. *Scudder*, 69 Cal.App.2d 717, 719 [160 P.2d 90].) References to the McDonough case in other decisions were, as petitioner contends, dicta unnecessary to such decisions. (*Dierssen* v. *Civil Serv. Comm.*, 43 Cal.App.2d 53, 61 [110 P.2d 513] ; *Wallace* v. *Board of Education*, 63 Cal.App.2d 611, 615 [147 P.2d 8].) In other cases, which in the view of the majority opinion herein required the application of *McDonough* v. *Goodcell,* the distinction has been abandoned in favor of adherence to the logical implications of the rule of the Dare and Moran cases. (*Transportation Bldg. Corp.* v. *Daugherty,* 74 Cal.App.2d 604, 616 [169 P.2d 470] ; *Kleiner* v. *Garrison,* 82 Cal.App.2d 442, 446, 447 [187 P.2d 57].)

The doctrine of *McDonough* v. *Goodcell* cannot be reconciled with the rationale of the Dare and Moran cases upon which it is purportedly based. In *Standard Oil Co.* v. *State Board of Equalization,* 6 Cal.2d 557, 559 [59 P.2d 119], this court in announcing its departure from the heretofore prevailing rule (see *Suckow* v. *Alderson,* 182 Cal. 247 [187 P. 965]) that certiorari will lie to review the decisions of a state-wide administrative agency stated: "Concisely stated, our conclusion that we are without authority or jurisdiction to entertain this proceeding or to issue the writ here sought, is based upon the established premises that a writ of certiorari . . . will lie only to review the exercise of judicial functions (sec. 1068, Code Civ. Proc.) and that the legislature is without power . . . to confer judicial functions upon a state-wide agency" under article VI, section 1 of the California Constitution. Subsequent cases have expanded the doctrine of the Standard Oil Company case into the following syllogism: Judicial functions cannot constitutionally be delegated to

state-wide administrative agencies. The function of making final findings of fact is judicial, and such finality can be accorded only to the findings of fact of a court. (*Drummey* v. *State Board of Funeral Directors,* 13 Cal.2d 75, 84-85 [87 P.2d 848].) Accordingly, the findings of fact of an administrative agency must be reviewed by a court that must exercise its independent judgment on the facts (*Drummey* v. *State Board of Funeral Directors, supra*) and determine therefrom whether those findings are supported by the *weight* of the evidence (*Dare* v. *Board of Medical Examiners,* 21 Cal.2d 790, 801 [136 P.2d 304]; *Moran* v. *Board of Medical Examiners,* 32 Cal.2d 301, 308 [196 P.2d 20]), and not merely by *substantial* evidence. Presumably, any more limited review would confer judicial functions upon the administrative agency in violation of the constitutional prohibition thereof.

Given this reasoning as the basis of the foregoing decisions, it is difficult to justify the distinction established by *McDonough* v. *Goodcell* and the majority opinion herein. If finality cannot be accorded the findings of fact of an administrative agency because the function of making such findings is exclusively judicial, is the function any less judicial because the petitioner attacking the findings does not already have a license? Insurance Code, section 1805, provides that the insurance commissioner may refuse to issue a bail license upon any of eight specified findings. Section 1807 provides that he may suspend or revoke a bail license for any cause for which he could refuse to issue a license. If he were to make a finding of fact under section 1807, does the California Constitution prohibit this court from according finality to that finding but permit the same finding to be made final under section 1805? If there can be no administrative finality under the California Constitution, as the majority of this court holds, then the prohibition should apply whether the petitioner seeks to secure a license or to retain it. If, on the other hand, the administrative findings of fact may constitutionally be made final in license denial cases, they may constitutionally be made final in license revocation cases. Manifestly, the doctrine of *McDonough* v. *Goodcell* is at odds with the principles of judicial review announced by the majority of this court in the Dare and Moran cases. If the majority opinion herein is to be consistent with those principles, it should overrule *McDonough* v. *Goodcell*. Otherwise, the Moran, Dare, Laisne, Drummey and Standard Oil Co. cases must be overruled.

The fallacy of *McDonough* v. *Goodcell* is not its announce-ment of the rule of administrative finality but its failure to give that rule its full and proper application. The remedy for the presently existing inconsistency is not the total repudi-ation of the rule of administrative finality but the recognition that "our duty is at an end when it becomes evident that the Commission's action is based on substantial evidence and is consistent with the [statutory] authority." (*Securities & Exchange Com.* v. *Chenery Corp.*, 332 U.S. 194, 207 [67 S.Ct. 1575, 1760, 91 L.Ed. 1995]; *Republic Aviation Corp.* v. *National Labor R. Board*, 324 U.S. 793, 800 [65 S.Ct. 982, 89 L.Ed. 1372, 157 A.L.R. 1081]; *National Broadcasting Co.* v. *United States*, 319 U.S. 190, 224 [63 S.Ct. 997, 87 L.Ed. 1344].) "The construction of a constitutional provision like that in question, given by the California court, is not upheld by the weight of authorities and would, if carried to its logi-cal conclusion, emasculate, if not destroy, the powers of prac-tically every administrative board or tribunal in [the] state." (*Batty* v. *Arizona State Dental Board*, 57 Ariz. 239 [112 P.2d 870, 873].) Compelling reasons for the abandonment of the position taken by the majority of this court have been expressed in the dissenting opinion in the Laisne case (19 Cal. 2d at 848-869) and in the concurring and dissenting opinion in the Dare case (21 Cal.2d at 803-816). Further repetition of these arguments is unnecessary.

It is contended, however, that this court is foreclosed from the reexamination of its error by virtue of the legislative adoption of the rule of the Dare and Laisne cases in the enactment of section 1094.5 of the Code of Civil Procedure. I can find no such legislative intention in the statute, which provides merely that "Where it is claimed that the findings are not supported by the evidence, *in cases in which the court is authorized by law to exercise its independent judgment on the evidence,* abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence; and in all other cases abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record." (Italics added.) The Legislature, however, did not prescribe the cases in which the court is authorized by law to exercise its independent judgment on the evidence. Indeed, under the decisions of this court, it could not for the reason that the decisions from Standard Oil to Dare specifi-

cally held that the authority to exercise an independent judgment is expressly conferred on the court by the California Constitution. This court, and not the Legislature, is the final arbiter of the meaning of the California Constitution. A decision by this court that the superior court is not, in cases such as this, "authorized by law to exercise an independent judgment on the evidence," would be consistent with, not contrary to, section 1094.5.

Edmonds, J., concurred.