[Civ. No. 5516. Fourth Dist. Nov. 14, 1957.]

PALM SPRINGS TURF CLUB (a Corporation), Respondent, v. CALIFORNIA HORSE RACING BOARD et al., Appellants.

Edmund G. Brown, Attorney General, William V. O'Connor, Chief Deputy Attorney General, and Howard S. Goldin, Deputy Attorney General, for Appellants.

Rogers & Clark and Webster V. Clark for Respondent.

STONE, J. pro tem.*—Respondent filed an application with appellant California Horse Racing Board for a license to conduct thoroughbred horse racing at Palm Springs, Riverside County, California. The application was filed pursuant to section 19480.5 of division 8, article 4 of the Business and Professions Code, generally referred to as the California Horse Racing Act. Section 19480.5 provides that:

"The board shall not issue a license to conduct a horse racing meeting at any place, inclosure, or track, not used for horse racing meetings prior to July 1, 1941, unless prior to the beginning of the construction or preparation of such place, inclosure or track for horse racing meetings, the board, upon application in such form as it may require, has determined

*Assigned by Chairman of Judicial Council.

that conducting horse racing meetings at such place will be in the public interest and will subserve the purposes of this chapter.''

The application was heard before the California Horse Racing Board on February 15th and 16th, 1954, at Palm Springs, Riverside County, California, at which hearing evidence was offered on behalf of the Palm Springs Turf Club and on behalf of objectors in opposition to the granting of such application. Another corporation, the Desert Turf Club, had filed an application for a license to conduct quarter horse racing at a different location near Palm Springs, Riverside County, sometime prior to the hearings on February 15th and 16th, 1954. Some of the objections to respondent's application applied equally to the Desert Turf Club application and by stipulation the evidence presented at the hearings which was applicable to both petitions was deemed received as to each. After hearing the evidence adduced, the board inspected the proposed site of each applicant. Thereafter, the board granted the application of the Desert Turf Club and denied the application of Palm Springs Turf Club.

Respondent then filed a proceeding in the Superior Court of Riverside County pursuant to section 1094.5 of the Code of Civil Procedure requesting a writ of mandate requiring the California Horse Racing Board to issue a license to the Palm Springs Turf Club enabling it to conduct thoroughbred horse racing meetings at a proposed site near Palm Springs, Riverside County, California. The superior court granted the writ of mandate and the board has appealed.

In its petition for writ of mandate and on this appeal respondent contends: (1) That the findings of the board were insufficient; (2) That the board's decision is not supported by substantial evidence as required by section 1094.5, subdivision (c) of the Code of Civil Procedure; and (3) That the board abused its discretion by discriminating against Palm Springs Turf Club in denying its application for a license while granting a license to the Desert Turf Club.

SUFFICIENCY OF THE FINDINGS

The board's findings are framed in the language of the statute and are as follows:

''1. That the applicant, Palm Springs Turf Club, has failed to show that the conducting of thoroughbred racing meetings at the applicant's proposed Palm Springs Track would be in

the public interest and would subserve the purposes of the California Horse Racing Act. . . .

"2. That the conducting of thoroughbred racing meetings at the applicant's proposed Palm Springs Track would not be in the public interest and would not subserve the purposes of the California Horse Racing Act."

It would be helpful to a reviewing court to have detailed findings before it as was pointed out by the superior court. ■ However, if the statute pursuant to which an administrative proceeding is held does not require the administrative board conducting the hearing to make detailed and specific findings they are not required. (*California Shipbuilding Corp.* v. *Industrial Acc. Com.*, 31 Cal.2d 270, 271 [188 P.2d 27].)

Respondent relies upon two California cases in support of its contention that detailed findings should have been made by the board. It cites *Swars* v. *Council of the City of Vallejo*, 33 Cal.2d 867 [206 P.2d 355] ; and *Temescal Water Co.* v. *Department of Public Works*, 44 Cal.2d 90 [280 P.2d 1]. A reading of the Swars case reveals that the statute under which the administrative proceeding there involved had been authorized required specific findings. We have found no provision in the Business and Professions Code under which the hearing in this case was conducted requiring the California Horse Racing Board to make such findings and none has been cited to us. The Temescal Water Company case, at page 102, holds in substance that findings must conform to the statutes governing the particular agency and that if the findings do not conform to the statute and if they are insufficient to allow a fair review of the decision, the defect may be corrected at a hearing pursuant to a writ of mandate under section 1094.5 of the Code of Civil Procedure. It does not overrule the cases holding that detailed findings are not required in a proceeding before an administrative body unless the statute authorizing the proceeding requires them. Nowhere do we find support in the Temescal case for respondent's proposition that a failure to make detailed findings constitutes a prejudicial abuse of discretion on the part of appellant board under Code of Civil Procedure, section 1094.5.

In the case of *Southern Calif. Jockey Club* v. *California Horse Racing Board*, 36 Cal.2d 167, 177 [223 P.2d 1], a case in many respects similar to the one we are now considering, the court referred to the findings in connection with the in-

terpretation of the words "public interest" and held that the findings couched in the language of the statute were sufficient. At pages 177-178, the court said:

"Be that as it may, the finding of the board was in the language of the statute. It reads 'That the applicant has failed to show that the conducting of the horse racing meetings at the proposed Puente track would be in the public interest and would subserve the purposes of the California Horse Racing Act and that therefore said application is hereby denied.' Likewise the court's finding was sufficient."

The findings of the board in the instant case are findings of the ultimate facts by an administrative agency in the general language of the statute and are sufficient. (*California Shipbuilding Corp.* v. *Industrial Acc. Com., supra.*)

### Is There Substantial Evidence To Support the Finding of the Board?

This proceeding in mandate pursuant to Code of Civil Procedure, section 1094.5, stems from the California Horse Racing Board's denial of respondent's application for a license to engage in the horse racing business. It has been established that a review of the proceedings of a constitutional administrative agency pursuant to which an application for a license to do business has been denied is not a trial de novo, whether the matter is reviewed in the superior court or an appellate court. The sole function of a court reviewing such a proceeding is to determine whether there is substantial evidence in the record to support the findings of the board and whether there has been an abuse of discretion. (*Southern Calif. Jockey Club* v. *California Horse Racing Board*, 36 Cal.2d 167, 173-175 [223 P.2d 1]; *Marcucci* v. *Board of Equalization*, 138 Cal.App.2d 605, 608 [292 P.2d 264].) A review of the record in this case reflects that the board proceeded under the provisions of the Business and Professions Code sections governing horse racing in California, commonly known as the California Horse Racing Act. Sections 19530 and 19534 of that code limit the number of days available for thoroughbred horse racing in Riverside County in which the city of Palm Springs is located to 14 days a year. Spokesmen for the five major racing tracks in California testified in substance that based upon their experience in conducting thoroughbred racing there was little likelihood that the proposed track at Palm Springs would be a success. They testified that in reaching such conclusion the 14-day

limitation on thoroughbred horse racing in Riverside County was considered in addition to the proposed location of the Palm Springs track, the transportation facilities available, and the population of the surrounding territory. They all testified that failure of a thoroughbred track at Palm Springs would be detrimental to horse racing in California. A Doctor Frank Porter Miller testified on behalf of the directors of the California Thoroughbred Breeders. He stated his group represented breeders with an investment of $60,000,000 in animals and breeding farms in California and that this group opposed the granting of the license because California now has all of the racing it can absorb. He stated there were 347 days of thoroughbred racing in 1953, plus 94 days of quarter horse racing and standard breeds in 18 separate meetings or a total of 441 days of racing. Excluding Sundays there were only 313 days available for 441 days scheduled racing, and as at some racing meetings no races are held on Monday, the number of available racing days would be reduced accordingly. There was testimony that the overlapping of racing dates of thoroughbred horses would be fatal to racing.

There were a number of home owners, some ministers, a welfare worker, and the superintendent of schools of Palm Springs, who opposed the granting of the license. The substance of their testimony was that the location of Palm Springs, its limited size and the characteristics of the community were such that the juvenile problem, as well as the general police problem, would be greatly accentuated by the establishment of a race track in the community. They also testified that the schools would be overcrowded, traffic would be congested, and municipal facilities would be burdened, all of which would be detrimental to the general public in the area, and that to meet these burdens would be difficult and costly.

There was also testimony that there is a private school located adjacent to the proposed location of the track. The owners objected upon the ground it would be detrimental to the school and jeopardize their investment of some $250,-000. It was also alleged on behalf of the school that many dissolute and unsavory characters follow racing or are attracted to race tracks which would provide a bad influence if not a real danger to children attending the school, especially girls of teen-age.

Respondent argues and the superior court found that this

objection is a matter of private interest while only matters of public interest are to be considered. It may be that the proprietary interest of the owners of the school should be considered a private interest but the well-being of students, whether in a public, parochial or private school is always a matter of public interest. (*Weiss* v. *State Board of Equalization,* 40 Cal.2d 772, 775 [256 P.2d 1].)

Respondent also argues that the board based its findings to a great extent upon opinion evidence which is not substantial when weighed against the mathematical computations respondent presented. Respondent did quote facts and figures taken from the records of other major race tracks, but when those statistics were projected to the proposed Palm Springs track they too became opinion evidence. In fact, most of the evidence adduced by both respondent and appellant was opinion evidence. The Supreme Court in *Southern California Jockey Club* v. *California Horse Racing Board, supra,* recognized that reliance upon this type of evidence is inescapable because of the very nature of the proceedings. The court said, at page 177:

"Thus it was for the board to determine whether plaintiff's evidence was such that the burden had been met. This is especially true where most of the evidence consists of opinions, and the issues involved—public interest and purposes of the act—are general and incapable of exact definition. Indeed, plaintiff states in its brief: 'A moment's reflection upon the very nature of the determination that the board was required to make shows that such determination must be predicated, not upon provable concrete facts, but upon opinion evidence exclusively.' In such a case, wide discretion is necessarily vested in the fact-finder."

 We believe the evidence which revealed the 14-day limitation of racing at Palm Springs, the geographical location of the proposed site, the population of the area, the testimony of breeders and track operators, together with the board's visit to the area, constitute substantial evidence to support the board's findings. We have not attempted here to relate or evaluate the evidence produced by respondent because it is not the province of this court to weigh or compare it with the evidence produced by appellant. As the court said in *Marcucci* v. *Board of Equalization,* 138 Cal. App.2d 605, page 609 [292 P.2d 264]:

". . . had this court heard the evidence, as the board did through its hearing officer, its evaluation of the contents of

the record might have been the same as the board's evaluation. All of which is simply to say that the power of factual decision must be placed somewhere; that it has been placed with the board and it matters not what, upon the cold record presented, a reviewing court might think it would have done had it been finding the facts in the first instance. The rules above stated must be applied and enforced and the search of the reviewing court limited to ascertaining whether or not on the whole record there is substantial support for the administrative decision under review.''

### DID THE BOARD DISCRIMINATE AGAINST PALM SPRINGS TURF CLUB?

Respondent dwells at some length upon the fact that horse racing, except for county fairs, agricultural associations and quarter horse racing associations, is confined to four of the metropolitan counties of the state, namely, Alameda, San Mateo, Los Angeles and San Diego.

The basic problem lies not in the board's desire to favor metropolitan counties but in the legislative restrictions on the number of days racing permitted the various classes of counties. Business and Professions Code, section 19530, provides:

''*Counties; Classification.* For the purpose of this chapter there are four classes of counties in the State of California, as follows:

''1. Counties of the first class are those having a population of 1,000,000 or over;

''2. Counties of the second class are those having a population of 600,000 or over and less than a million;

''2.5. Counties of the second and one-half class are those having a population of 500,000 or over and less than 600,000;

''3. Counties of the third class are those counties having a population of less than 500,000.''

Riverside is a county of the third class under the classification of section 19530 of the Business and Professions Code. Section 19534 then provides in part:

''*Counties of third class.* In each county of the third class, but outside the additional area included in counties of the second class, the board may allow not to exceed 14 racing days per year in each county.''

Undoubtedly this 14-day limitation was a major factor in the denial of the license to respondent. This limitation is statutory, the board is bound by it, and it is illogical to charge

the board with discrimination when it is merely authorized to administer the statute which allows more racing days to metropolitan counties than the smaller counties.

Respondent also alleges discrimination and abuse of discretion because the board granted a license for quarter horse racing at Palm Springs while denying respondent's application to engage in thoroughbred horse racing. The Legislature has made a distinction between these two types of horse racing. Business and Professions Code, section 19539.5, authorizes the horse racing board to allot a maximum of seven weeks of racing seven days per week for quarter horse racing in one county in any one year as contrasted with the 14-day limitation on thoroughbred racing heretofore mentioned. The quarter horse racing season could be three and a half times as long as the thoroughbred racing season at Palm Springs, and the board could have concluded that the longer racing season presaged a greater likelihood of success. Then too the Desert Turf Club proposed an investment of less than half that of respondent. The longer racing period and smaller investment may have been considered as significant dissimilarities by the board. It should also be noted that the board visited both proposed sites and the location of each track may have had a bearing upon its decision. In view of the distinctions enumerated and the fact that the two types of racing are treated differently in the Business and Professions Code, the charge of discrimination is untenable.

The judgment of the superior court granting a peremptory writ of mandate against the California Horse Racing Board is reversed and said superior court is directed to enter its order denying the peremptory writ.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied December 13, 1957, and respondent's petition for a hearing by the Supreme Court was denied January 6, 1958.