[Civ. No. 9737.   Third Dist.   Oct. 21, 1960.]

SIDNEY MANDEL et al., Appellants, v. THE CEMETERY BOARD, DEPARTMENT OF PROFESSIONAL AND VOCATIONAL STANDARDS, et al., Respondents.

Buchalter, Nemer, Fields & Savitch for Appellants.

Stanley Mosk, Attorney General, E. G. Funke, Assistant Attorney General, F. G. Girard and Wilbur B. Thayer, Deputy Attorneys General, for Respondents.

PEEK, J.—Appellants Sidney Mandel, A. S. Glikbarg and Henry Kawin, Trustees of the Endowment Care Fund of Belmont Memorial Park Corporation of California, a nonprofit cemetery corporation, petitioned the Superior Court of Sacramento County for a writ of mandate to compel the respondent Cemetery Board to rescind its order requiring them to reinvest money from the endowment fund of the corporation, presently on loan to Belmont Associates, Ltd., and secured by a first deed of trust on real property. They now appeal from the order of the trial court denying said petition.

The facts, which are not in dispute, show that Belmont Cemetery Association was organized in 1926 as a corporation for the purpose of operating and selling ground for the interment of human remains. The cemetery is located in the city of Fresno and is improved; that is, it is presently ready to be used for the purpose above mentioned. Since its organization the association has been and is a cemetery authority, as defined in section 7018 of the Health and Safety Code, and is an endowment care cemetery, as defined by section 8738 of that code.

On September 29, 1955, Harry Groman, for the sum of $10,000 obtained an option to purchase all of the 1,000 shares of the cemetery association's stock. On November 28, 1955, Groman, acting for himself and as agent for the K. G. & Co., a copartnership, Desser & Garfield, a copartnership, Edward Rothschild, Robert Brilliant, Leo Strassburg, Meyer Pritkin, and Arthur Gilbert (hereinafter referred to as Group A), pursuant to a previous agreement dated November 23, 1955, exercised said option with the payment of the additional sum of $400,000.

In the early part of 1956, the cemetery association, by charter amendment, changed its name to the Belmont Cemetery Corporation and became a nonprofit corporation. The appellants then acquired three shares of the stock of the corporation, were elected to the board of directors and became trustees of the endowment fund. These positions were previously held by persons included in Group A.

In May, 1956, a partial liquidation was agreed upon whereby all stock, except that held by appellants, would be redeemed and in return the corporation would deed to Group A all of the assets of the corporation, except the endowment fund and some 400 improved cemetery plots. After this liquidation, Group A owned in fee approximately 6,200 burial plots and various buildings and equipment necessary to operate the cemetery.

A limited partnership was then formed known as Belmont Associates, Ltd., to which was transferred all of the assets Group A had received from the corporation. The limited partnership then leased back to the corporation all of the buildings and equipment at a monthly rental of $1,250, or $15,000 per year. An agreement was also executed wherein it was provided that there could be an exchange of burial plots; that is, if a prospective purchaser wished to buy one of the plots held by the limited partnership there could be an exchange of plots between the corporation and the partnership to effectuate the sale.

On the same day appellants were appointed, proceedings were commenced to completely change the investment structure of the trust fund. Four days later the appellants, as trustees of the fund, loaned the sum of $300,000 out of a total of approximately $385,000, or slightly less than 80 per cent thereof, to the limited partnership for a term of 10 years at the rate of 6 per cent per annum, or $18,000 per annum, secured by a first deed of trust on the 6,200 burial plots then

owned by the partnership. Here it is interesting to note that as a result of these transactions, Group A received the use of $300,000 for the period of the lease at a cost of 1 per cent per annum.

Thereafter, the board, following a hearing upon a petition filed by its executive secretary charging said loan to be in violation of sections 8751 and 8751.1 of the Health and Safety Code, found in part as follows: "Sidney Mandel, A. S. Glikbarg and Henry Kawin, trustees of the Endowment Care Fund of the Belmont Park Corporation of California, . . . have in their capacity as such trustees, invested endowment care funds of said Belmont Memorial Park Corporation of California in violation of the provisions of Article 3, Chapter 5, Part 3, Division 8, of the Health and Safety Code of the State of California in that the said respondents, as such trustees, loaned such endowment care funds in an amount of $300,000 to Belmont Associates, Ltd. on certain terms more particularly described in Paragraph II of the petition for hearing . . . ." The paragraph referred to in essence merely states the terms and nature of the loan and the recordation of the deed of trust. Pursuant to such findings, the board made and entered the following order: "Respondents Sidney Mandel, A. S. Glikbarg, and Henry Kawin, Trustees of the Endowment Care Fund of Belmont Memorial Park Corporation of California, are hereby required, ordered and directed to reinvest the sum of $300,000 presently invested in the form of a loan to Belmont Associates, Ltd., a limited partnership, within a period of six (6) months from the effective date hereof, in conformity with the provisions of Article 3, Chapter 5, Part 3, Division 8 of the Health and Safety Code of the State of California."

The dominant issue presented by this appeal concerns the power of the board to compel the reinvestment of the endowment fund presently loaned to the partnership under the facts and circumstances of this case. As previously mentioned, the board found that the loan to the limited partnership violated the provisions of article 3, chapter 5, part 3, division 8 of the Health and Safety Code. Included within this reference are sections 8751 and 8751.1. These are the two sections which form the basis of the original complaint against appellants. Section 8751 lists eight different types of authorized investments which, among other things, includes first deeds of trust on improved realty. Section 8751.1 provides: "In addition to the requirements of Section 8751, the funds may be invested and reinvested and kept invested in investments of the

type and in the manner as provided in Section 2261 of the Civil Code.''

The Civil Code section referred to incorporates the well-known ''prudent investors'' rule, which requires that trustees in the investing of trust funds ''. . . shall exercise the judgment and care, . . . which men of prudence, discretion and intelligence exercise in the management of their own affairs, not in regard to speculation, but in regard to the permanent disposition of their funds, considering the probable income, as well as the probable safety of their capital.'' While in one sense this section broadens the list of legal investments for trustees of endowment care funds, it also places trustees under the mandate of the ''prudent investors'' rule in regard to all of their financial transactions.

Clearly, the respondent could find that a trustee exercising the care and skill of an ordinary prudent man would not invest more than three-fourths of his funds in one security, as in the present case. In other words, an essential part of the ''prudent investors'' rule is the requirement that investments be diversified. (See *Day* v. *First Trust & Sav. Bank,* 47 Cal.App.2d 470 [118 P.2d 51]; Bogert, Trusts & Trustees, 2d ed., § 612, p. 414; 3 Scott on Trusts, § 228.) It is uncontroverted that the total value of the endowment fund was $385,000 and that out of such total, $300,000, or nearly 80 per cent thereof, was invested in the note and first deed of trust. There can be no question but that such an investment could be found to be a violation of the rule as set forth in section 2261 of the Civil Code; and hence, the Board, in ordering that the $300,000 loaned to Belmont Associates, Ltd., be reinvested was acting within the express authority conferred upon it by said section 2261.

The appellants further contend that even granting the power of the board to so act, its decision is void because it is merely a conclusion of law. This contention is without merit. There is no statutory mandate requiring the board to make specific findings and hence, none were required. (*Palm Springs Turf Club* v. *California Horse Racing Board,* 155 Cal.App.2d 242-245 [317 P.2d 713].) Furthermore, where the findings of the board, either by restatement of the language of the statute or by reference to the language of the accusation, sufficiently point out the specific grounds upon which it has determined a case, such findings are sufficient. (*Webster* v. *Board of Dental Examiners,* 17 Cal.2d 534-544 [110 P.2d 992].) Here the findings set forth the particular transaction

which was under consideration and refer to that portion of the Health and Safety Code dealing with authorized investments upon which the board predicated its order. Although findings with more particularity might well be desired, nevertheless we conclude that the findings of the board in the present proceeding are sufficient to comply with the rules as above set forth.

Lastly, appellants contend that the reinvestment order is not legally capable of fulfillment, since (1) they do not now have the $300,000 to reinvest, and (2) they cannot regain this sum from Belmont Associates, Ltd., since the note is not in default. Although this contention is argued at some length in appellants' brief, we find nothing in the record to support such argument. In any event, whether or not appellants are able to comply with the order is not an issue within the scope of this appeal.

The various other contentions raised by appellants appear to become immaterial in view of the conclusions we have reached and hence, need not be discussed.

The judgment is affirmed.

Van Dyke, P. J., and Schottky, J., concurred.

A petition for a rehearing was denied November 18, 1960, and appellants' petition for a hearing by the Supreme Court was denied December 14, 1960. Schauer, J., and White, J., were of the opinion that the petition should be granted.