[Civ. No. 23528. Fourth Dist., Div. Two. Jan. 16, 1981.]

PAUL T. JONES, Plaintiff and Appellant, v.
THE SUPERIOR COURT OF ORANGE COUNTY,
Defendant and Respondent;
CALIFORNIA HORSE RACING BOARD,
Real Party in Interest and Respondent.

726

## COUNSEL

Ronald R. Talmo for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

George Deukmejian, Attorney General, and John J. Crimmins, Deputy Attorney General, for Real Party in Interest.

## OPINION

**GARDNER, P. J.—**██ In this case we hold that the 1966 constitutional revision which repealed article IV, section 25a of the California Constitution and enacted article IV, section 19, subdivision (b) in its place did not change the status of the California Horse Racing Board as a board of constitutional origin for purposes of administrative mandamus review.

After an administrative hearing, the California Horse Racing Board suspended the horse trainer's license of petitioner for six months for (1) administering a proscribed drug to a horse under his jurisdiction, and (2) for having a proscribed drug in his possession. Petitioner filed a petition for writ of mandate under Code of Civil Procedure section 1094.5. The court denied the petition. This appeal followed.

### DISCUSSION

Petitioner first contends that the trial court erroneously applied the substantial evidence test to these proceedings. Specifically, he alleges that even though article IV, section 25a was judicially interpreted to give the board constitutional standing, the 1966 amendment relegated the board to an entity having only legislative origin. If the board is of legislative origin, the independent judgment standard would apply. If it is of constitutional origin, the substantial evidence standard would ap-

ply. We conclude the trial court properly applied the substantial evidence test in reviewing its proceedings.

Much of the current uncertainty over the status of the board stems from its hybrid roots. The Legislature enacted the Horse Racing Act (Stats. 1933, ch. 769, p. 2046; Deering's Gen. Laws, 1933 Supp.Act. 3420, later codified as Bus. & Prof. Code § 19400 et seq.) which purported to create the board in 1933. However, section 19 of the legislative act provided that the legislation itself would not take effect until a constitutional amendment ratifying the act was adopted. Several months later in 1933, article IV, section 25a of the Constitution was adopted. This provided for the Legislature to regulate horse racing. The language of the section is as follows: "The Legislature may provide for the regulation of horse races and horse race meetings and wagering on the results thereof. The provisions of an act entitled 'An act to provide for the regulation and licensing of horse racing, horse racing meetings, and the wagering on the results thereof: to create the California Horse Racing Board for the regulation, licensing and supervision of said horse racing and wagering thereon; to provide penalties for the violation of the provisions of this act, and to provide that this act shall take effect upon the adoption of a constitutional amendment ratifying its provisions,' are hereby confirmed, ratified, and declared to be fully and completely effective; *provided*, that said act may at any time be amended or repealed by the Legislature."

In 1962, section 25a was amended by the deletion of the second sentence. Thus, it is clear that while the board grew out of legislative action, the Legislature's authority to act was dependent upon a constitutional amendment.

Between the initial constitutional amendment in 1933 and its subsequent amendment under discussion in 1966, three reported decisions discussed the origin of the board in interpreting the nature of the 1933 amendment. The appellant is correct in noting that the first two of these cases, *Sandstrom* v. *California Horse Racing Board* (1948) 31 Cal. 2d 401, [189 P.2d 17, 3 A.L.R. 2d 90], and *So. Cal. Jockey Club* v. *Cal. etc. Bd.* (1950) 36 Cal.2d 167 [223 P.2d 1], did not specifically speak to the origin of the board for purposes of deciding the appropriate standard of review under Code of Civil Procedure section 1094.5. Nevertheless, just as in this case, *Sandstrom* did involve the suspension or revocation of an occupational license. The question addressed in each case was the constitutional authority of the Legislature to delegate its

power to the board, an administrative agency. Each case permitted that delegation.

The appellant mistakes, however, the issue of legislative delegation of power with the question of the constitutional or legislative origin of an administrative body for purposes of mandamus review. Only the latter point concerns us here. Appellant ignores significant language in both *Sandstrom* (31 Cal.2d 401, 413) and *So. Cal. Jockey Club* (36 Cal.2d 167, 170) discussing the peculiar history of the board's creation noting its constitutional roots. Thus, appellant's position that the court "mislabelled" the board as a constitutional agency in *Palm Springs T. Club* v. *Cal. Horse etc. Bd.* (1957) 155 Cal.App.2d 242 [317 P.2d 713] is not well taken.

Certain commentators (see Cal.Admin. Mandamus (Cont. Ed. Bar Supp. 1979) § 5.68, p. 59) have questioned whether the board remains of constitutional origin since the 1966 constitutional amendment. This amendment repealed article IV, section 25a and enacted in its place article IV, section 19, subdivision (b), which provides, "The Legislature may provide for the regulation of horse races and horse race meetings and wagering on the results." No appellate decision has squarely analyzed the effect of the amendment. The most recent case, *Overturf* v. *California Horse Racing Bd.* (1978) 86 Cal.App.3d 979 [150 Cal.Rptr. 657], is not persuasive authority for the proposition that the board remains a constitutional creature since *Overturf* summarily cited the pre-1966 cases without discussing the 1966 amendment. Thus, we need to give our analysis on that point.[1]

A cursory glance at repealed Article IV, section 25a and amended article IV, section 19, subdivision (b) reveals that there is no change in the basic wording in the grant of power to the Legislature in each case. The words of the sections are identical except for the deletion of the word "thereof" at the end of section 25a. The 1966 amendment merely deleted unnecessary verbiage. This was the general purpose for all of the amendments made under proposition 1-a in 1966. (See Voters Information Pamp. distributed by the Secretary of State in connection with the Nov. 8, 1966, General Election, p. 2.) That constitutional revision was for the purpose of streamlining and simplifying some of the cum-

---

[1] *Palm Springs T. Club* v. *Cal. Horse etc. Bd.* (1957) 155 Cal.App.2d 242 [317 P.2d 713], which directly held that the board was of constitutional origin was decided prior to the 1966 amendment.

bersome provisions of the Constitution and effectively reduced a portion of the Constitution from 22,000 words to 6,000 words. Moreover, shifting the horse racing provision to section 19, further organized the Constitution by combining provisions relating to horse racing and lotteries in a single section.

In view of the history of this constitutional revision and our own examination of the provisions involved, we have no hesitation in coming to the conclusion that the 1966 amendment wrought no change in the board's origin and that the board is still of "constitutional" origin for purposes of administrative mandamus review.

Thus, the trial court properly applied the substantial evidence test rather than the independent judgment test.

■ Defendant next complains because the hearing was had before a referee who was an employee of the board.

There was nothing irregular in this procedure. The board, not the referee, made the decision. The referee merely wrote a proposed decision which the board was free to accept or reject. There was nothing unfair or biased about the hearing. The referee acted as a referee, nothing more. The parties put on the evidence.

Last, the appellant contends that the findings of violations of title 4, California Administrative Code, sections 1887, 1890 are not supported by substantial evidence. Not so.

■ As to the section 1887 finding, a urine sample was taken of a horse which appellant trained. The identity of the sample and the chain of custody were well established. Section 1887 makes the trainer the absolute insurer of and responsible for the condition of the horses entered in a race, regardless of the acts of third parties. Appellant was the trainer of the horse. The chemical analysis showed the presence of a proscribed drug. It was not necessary to show that he administered the drug or that it was administered as a result of his negligence.

■ As to the section 1890 finding, the evidence is clear that he possessed contraband when a proscribed drug was found in his possession, i.e., his tack room. Section 1890 prohibits persons other than licensed veterinarians from possessing contraband, which includes "a narcotic, stimulant, or depressant." He admitted he received this medication

from a third person but claimed he did not know what it was. He was a licensee of the board and required to comply with its rulings and regulations. Under title 4 of the California Administrative Code section 1510, he is presumed to know the rules.

Judgment affirmed.

Tamura, J., and Kaufman, J., concurred.