[Civ. No. 25244.   Second Dist., Div. One.   Nov. 24, 1961.]

WARREN H. DESPER, Plaintiff and Appellant, v. J. T. JENKINS COMPANY et al., Defendants and Respondents.

Roger J. Pryor for Plaintiff and Appellant.

Spray, Gould & Bowers, Samuel B. Stewart, Hugo A. Steinmeyer, Robert H. Fabian and Melvin King for Defendants and Respondents.

WOOD, P. J.—Plaintiff (buyer) sought a declaration that a conditional sale contract for the sale of two motor vehicles (trucks) was unenforcible by reason of the alleged violations by the seller, defendant J. T. Jenkins Company, of section 2982, subdivision (a), of the Civil Code. The alleged violations were: the contract was not signed by the seller at the time

of its execution and prior to its delivery to the buyer; the contract did not specify certain items required to be specified in a conditional sale contract of a motor vehicle; and a copy of the contract was never delivered to plaintiff. Plaintiff also sought to recover from said defendant the amount of the down payment made by him under the contract, and he sought to recover from defendant Bank of America (assignee of the seller) the amount of the installments which he had paid to said bank under the contract. In a nonjury trial, judgment was in favor of defendants.

Plaintiff appeals from the judgment and contends that the evidence does not support the findings to the effect that defendant J. T. Jenkins Company complied with the provisions of section 2982, subdivision (a), of the Civil Code.

About January 27, 1958, plaintiff went to the place of business of defendant J. T. Jenkins Company in San Francisco, and a salesman showed him two White trucks. Thereafter, about January 31, 1958, the plaintiff, in Los Angeles, and a representative of the Jenkins Company, in San Francisco, had a telephone conversation in which they agreed upon a sale of the trucks to plaintiff under a conditional sale contract. On January 31, 1958, the Jenkins Company prepared an original and two copies of a conditional sale contract for the sale of the trucks to plaintiff, and the original and copies of the contract were sent to the office of the Jenkins Company in Los Angeles. On February 3, 1958, plaintiff signed the original and copies of the contract in the Los Angeles office of the company. The conditional sale contract provided that the sale price of the trucks was $13,500, sales taxes were $540, time price differential was $1,260, down payment was $3,540, the contract balance was $11,760, and the balance was payable in 24 monthly payments of $490 each commencing March 3, 1958. There was no provision in the contract for payment of license or transfer fees. At the time he signed the contract, plaintiff gave to the Jenkins Company a check for $3,540, the amount of the down payment. The contract was not signed by a representative of the Jenkins Company on February 3, the date plaintiff signed the contract, and a copy of the contract was not given to plaintiff on that date. The Los Angeles office of the Jenkins Company advised the San Francisco office of the company that plaintiff had signed the contract and had given a check for the down payment. Thereafter, on the same day, plaintiff's employees took possession of the trucks in San Francisco. The Jenkins Com-

pany deposited, in a bank in Los Angeles, the check which plaintiff had given for the down payment, and the Los Angeles office sent the original and copies of the conditional sale contract to the San Francisco office. The check which plaintiff had given to the Jenkins Company was not paid when presented to the bank on which it was drawn. On February 7, 1958, the check was returned to the Jenkins Company and, on the same day, the Jenkins Company repossessed the trucks. On February 10 plaintiff paid $3,540 (the amount of the unpaid check) to the Jenkins Company at its Los Angeles office and, on the same day, the trucks were returned to plaintiff. About February 14 the original and a copy of the conditional sale contract were signed by the Jenkins Company vice-president in San Francisco. (The evidence regarding the mailing and receipt by plaintiff of a copy of the contract will be stated later herein.) About February 17, 1958, the Jenkins Company pledged the contract with defendant bank as security for a loan of $10,500.

The Jenkins Company filed, with the Department of Motor Vehicles, a report of the sale of the trucks to plaintiff in which report the date of sale was shown as February 3, 1958. Pursuant to an agreement between the Jenkins Company and plaintiff, the company paid to the department the fees for transfer of the trucks to plaintiff, and it also paid the license fees for the first quarter of the year. On February 18, 1958, the Jenkins Company sent a statement to plaintiff for the amount of $215 representing the amount it had paid to the Department of Motor Vehicles. Plaintiff paid said amount to the Jenkins Company on April 11, 1958. Between March 3, 1958, and December 31, 1958, plaintiff paid $4,900 to defendant bank as payments under the contract. The last payment was made on December 30, 1958. On five occasions prior to December 30, 1958, the Jenkins Company repossessed the trucks for the reason that plaintiff was in default under the contract. On those occasions, plaintiff paid the amount of the delinquent payments, and the trucks were returned to him. Plaintiff did not make the payment due on January 3, 1959, and on January 6, 1959, the Jenkins Company repossessed the trucks. About February 13, 1959, the Jenkins Company sold the trucks for $7,000.

On June 19, 1959, plaintiff commenced this action.

The complaint alleged, in substance, that the Jenkins Company violated the provisions of section 2982, subdivision (a), of the Civil Code, in the following respects: (1) The contract

was not signed by the Jenkins Company at the time it was executed and prior to the time it was delivered to plaintiff, (2) it does not specify or itemize the kind of fees to be paid to public authorities and it does not state the total sum to be paid to such authorities, (3) it does not specify correctly the amount of the unpaid balance before computation of the time price differential, (4) it does not specify correctly the contract balance owed by the buyer to the seller, and (5) a copy of the contract was never delivered to plaintiff.

The Jenkins Company, in its answer, denied the allegations of the complaint regarding violations of the provisions of section 2982, subdivision (a), of the Civil Code, and it alleged, as a counterclaim, that it was entitled to a setoff of $8,655 for "use and abuse" of the trucks by plaintiff. In a cross-complaint, said defendant sought to recover $708.36 from plaintiff as a deficiency after sale of the trucks.

Defendant bank, in its answer, alleged that it had no information or belief sufficient to enable it to answer the allegations of the complaint regarding violations of section 2982, subdivision (a), of the Civil Code, and upon that ground the bank denied such allegations, and it also alleged that it was entitled to an offset of $4,900 (the amount plaintiff paid to the bank) as the reasonable value of the use of the trucks by plaintiff.

The court made findings substantially in accordance with the facts above stated regarding the transaction, and also found as follows: The conditional sale contract was executed and accepted by the Jenkins Company in San Francisco and an executed copy thereof was delivered to plaintiff by deposit of the same in the mail, postage prepaid, and addressed to plaintiff's place of business in Los Angeles. The contract contained all the agreements between buyer and seller relating to the sale of the trucks, and it was signed by the seller at the time of its execution and prior to its delivery to plaintiff. Fees to be paid to public authorities were not included in the contract balance and it was not necessary to specify or itemize such fees in the contract. The contract correctly specified the amount of the unpaid balance before computation of the time price differential, and it correctly specified the contract balance owed by the buyer. The Jenkins Company agreed to pay the registration and license fees and to extend credit to plaintiff on an open account for the amount of such fees. Plaintiff agreed that the fees should be paid on an open

book account and not be made a part of the contract. Such fees were paid by plaintiff to the Jenkins Company on "said open book account." The execution of the contract was not complete until the seller signed the contract in San Francisco with intent to give effect thereto. Seller delivered to buyer a complete copy of the contract upon its execution. Such delivery was by mail in the normal course of business.

Appellant contends that the evidence does not support the findings above stated.

On the date the contract referred to herein was executed, section 2982, subdivision (a), of the Civil Code, provided, in part, as follows:

"(a) Every conditional sale contract for the sale of a motor vehicle . . . shall be in writing . . . and shall contain all of the agreements between the buyer and the seller relating to the personal property described therein. It shall be signed by the buyer or his authorized representative and by the seller or its authorized representative, and when so executed an exact copy thereof shall be delivered by the seller to the buyer at the time of its execution. It shall recite the following items as such, in the following order: 1. . . . 5. A description and itemization of amounts, if any, which will actually be paid by the seller or his assignee to any public officer as fees in connection with the transaction, which are included in the contract balance. 6. The amount of the unpaid balance. . . . 8. The contract balance owed by the buyer to the seller. . . . 10. The names and addresses of all persons to whom the notice required under subdivision (g) of this section is to be sent."

[■■] Appellant argues that the omission from the contract of the amount of the fees to be paid to the Department of Motor Vehicles was a violation of the following provision of section 2982, subdivision (a), of the Civil Code: "Every conditional sale contract for the sale of a motor vehicle . . . shall be in writing . . . and shall contain all of the agreements between the buyer and the seller relating to the personal property described therein." He argues further that omission of the amount of such fees also violated the provision of subsection 5 of subdivision (a), and that the omission of the amount of such fees from the "unpaid balance" and from the "contract balance" violated the provisions of subsections 6 and 8 of subdivision (a).

The Jenkins Company will be referred to as the company.

As above stated, the conditional sale contract did not recite a description or itemization of the fees to be paid by the

company to the Department of Motor Vehicles, and the amount of such fees was not included in the contract balance.

The manager of the San Francisco office of the company testified as follows: In a telephone conversation with plaintiff on January 31, 1958, he told plaintiff that the company would "license" the trucks on a quarterly basis when the company received notice from the Los Angeles office that the contract had been signed and the down payment had been received. Plaintiff requested him to license the trucks on that basis and said that when the company found out what the fees would be he (plaintiff) would send a check to the company. The manager (witness) and one of plaintiff's employees went to the Department of Motor Vehicles and the manager paid the fees for transfer and registration of the trucks.

Plaintiff testified that in the telephone conversation with the company's vice-president, wherein "they arrived at an understanding in regard to " the trucks, they talked about the license fees on the trucks, and he "was under the impression that he was to pay the fees for these trucks; there was no question about that."

On February 18, 1958, as above stated, the company sent a statement to plaintiff for $215 for the fees paid by it to the Department of Motor Vehicles and, on April 11, 1958, plaintiff paid that amount to the company.

The provision of said subdivision (a), that the contract shall contain all the agreements, is a general provision. The provision of subsection 5 of said subdivision (a), that the contract shall recite the amount of public officer fees which are included in the contract balance, is a specific provision. It is undisputed that the amount of such fees was not recited in the contract balance. The trial court could infer that the buyer and seller intended that the amount of such fees should not be included in the contract balance. The company paid the fees and sent a bill therefor to plaintiff, who paid the bill. It appears from plaintiff's testimony that he knew that he was required to pay the fees. He does not contend that the amount which he paid was not the correct amount. It seems clear that the parties understood that the amount of the fees was not to be included in the contract balance. The court found that plaintiff agreed to pay the fees to the company on an open book account and that the fees were not to be made a part of the contract. That finding is supported by the evidence. The said section 2982 provides, as above shown, that the contract shall recite the amount of the fees *which are included in the contract balance.*

That was a specific provision of the section relating to the subject of fees, and as such specific provision it would govern with respect to that subject, as against a general provision to the effect that the contract should contain all the agreements relating to the personal property described therein. (See *Rose v. State*, 19 Cal.2d 713, 723-724 [123 P.2d 505].) Since the amount of the fees was not included, and was not intended to be included, in the contract balance, the omission of that amount from the contract was not a violation of said section 2982, subdivision (a), of the Civil Code.

Appellant argues that the company violated the provisions of section 2982, subdivision (a), by not signing the conditional sale contract on February 3, 1958, and by not delivering a copy to him on that day. He asserts further that, "No one saw the plaintiff's copy of the contract actually put in the mail or noted that anyone on behalf of the seller had signed the copy."

Plaintiff signed the contract on February 3, 1958, and gave a check to the company for the down payment on that date. The company delivered the trucks to plaintiff on February 3, and the company reported to the Department of Motor Vehicles that the sale was made on that date. A copy of the contract was not given to him on that date.

Plaintiff testified that at the time he signed the contract he asked for a copy of it; he was told that the company could not give him a copy because the deal was made in San Francisco and "it" had to be cleared in San Francisco; and that a copy would be mailed to him; that "around the 5th or 6th of February," he received two documents in the mail, and that they came "together."

The documents referred to by plaintiff were received in evidence as plaintiff's Exhibit 1. One document, dated February 3, was an invoice with respect to the trucks. The other document was a "Thermofax" copy of the front page of the conditional sale contract except that no signatures were thereon.

Plaintiff testified that the "copy" of the contract (part of Exhibit 1) was the only copy of the contract he received.

On cross-examination plaintiff testified that February 5th or 6th was not "the date" he received the invoice and Thermofax copy; that "date" could have been the date but he could not remember; he could not swear that the invoice and Thermofax copy came together; the mail received in his office was opened by a girl; the only mail he saw was that which the girl

handed to him; the first recollection he had of seeing the invoice and Thermofax copy was within 10 days after February 3.

The vice-president of the company testified that he thought that he signed the contract about February 13 or 14; the delay in signing was occasioned by the return, by the bank, of the check which plaintiff had given as a down payment; he (witness) signed the original contract, which went to the bank, and he signed "the one to the customer"; after the company discounted the original contract, he told the manager of the San Francisco office of the company to mail to appellant "his copy"; he (witness) did not see the manager "do anything" with the copies.

The manager of the San Francisco office of the company testified that he received the original and copies of the contract from the Los Angeles office about February 7; he put the original and copies on the desk of the vice-president of the company to be signed; subsequently he delivered the original to the defendant bank, and the yellow (customer's) copy was forwarded to plaintiff in an envelope which was deposited in the United States mail. On cross-examination the manager testified that he did not recall whether he personally addressed the envelope in which the customer's copy was mailed to plaintiff; he did not drop the envelope in the mail slot and he did not "see it actually get in the mail." In reply to a question on cross-examination as to how he knew "where the envelope was addressed to," the manager testified: "Well, when you hand a document to a secretary and tell her to make an envelope and put it in the mail with an address right on it, you indicate the place it is to go." He testified further that he assumed that his secretary followed his instructions.

On redirect examination he testified that one of his clerks delivered the envelope containing the customer's copy of the contract to the company's "pick up driver," and that the "actual dropping it [the envelope] in the mail box was done by our pick up driver"; that such procedure was the usual course of business in his office; the transaction with plaintiff was handled in the usual and ordinary course followed by the company in similar cases; if a customer cannot come to the San Francisco office to sign the contracts, the company forwards the contracts to the nearest place for his convenience; the contracts are returned to the San Francisco office, then they are signed and sent to the bank and to the customer.

The credit manager of the company testified that, in a con-

versation with plaintiff a short time before the trucks were repossessed, he asked the plaintiff, as follows: "Didn't you get a copy of your contract?"; plaintiff replied that "it" had been misplaced.

Section 2982, subdivision (a), provides in part (as set forth above) that a conditional sale contract for the sale of a motor vehicle "shall be signed by the buyer or his authorized representative and by the seller or its authorized representative, and when so executed an exact copy thereof shall be delivered by the seller to the buyer at the time of its execution."

With respect to appellant's argument that the company violated said subdivision (a) by not delivering a copy of the contract on February 3 (the day he signed the contract), there was evidence, as above indicated, that all negotiations for the sale of the trucks were conducted by telephone conversations between plaintiff, in Los Angeles, and a representative of the company, in San Francisco; the original and copies of the contract were sent to Los Angeles, for the signature of plaintiff, as an accommodation to plaintiff; plaintiff was told at the time he went to the Los Angeles office of the company that a copy of the contract could not be given to him at that time for the reason that the deal had been made in San Francisco and it had to clear there. There was no evidence that the Los Angeles representative had authority to sign the contract.

The trial judge could reasonably conclude that the contract was sent to the Los Angeles office as an accommodation only to plaintiff; it was not intended by the company that the contract should be effective until it was accepted and signed by the company in San Francisco; plaintiff, at the time he signed the contract, had knowledge of such intention and acquiesced therein; the company should not be penalized for accommodating plaintiff by permitting him to sign the contract in Los Angeles instead of requiring him to come to San Francisco where the trucks were located and where the company conducted all negotiations in connection with the transaction; the company was justified in withholding delivery of the contract, and in repossessing the trucks, after plaintiff's check for the down payment was returned by the bank and until plaintiff paid the amount of the down payment with the cashier's check on February 10. Under the circumstances here, the court did not err in its implied finding that the company did not violate said section 2982, subdivision (a), by not giving plaintiff a copy of the conditional sale contract on the date he signed the contract.

With respect to appellant's argument to the effect that there was no evidence that "his" copy of the contract was signed upon behalf of the company, there was testimony by the vice-president of the company that he signed the original and the customer's copy.

■ Another argument of appellant is that there was no evidence of mailing the copy. The court found that delivery of the copy was by mail in the normal course of business. There is a disputable presumption that the ordinary course of business has been followed. (Code Civ. Proc., § 1963, subd. 20.) In *Savarese* v. *State Farm etc. Ins. Co.*, (150 Cal. App.2d 518 [310 P.2d 142]), it was held that there was a strong inference of mailing (a notice of cancellation of an insurance policy) based upon the detailed evidence therein as to the established practice of the company with respect to such mailing.

In the present case, the manager of the San Francisco office of the company testified that the transaction with plaintiff was handled in the usual and ordinary course followed by the company in similar cases. That course, according to the testimony of the vice-president and the testimony of the manager, was, in substance, that the vice-president signed the customer's copy and gave it to the manager; the manager gave the copy to his secretary and instructed her to address an envelope to the purchaser and place the envelope in the mail; the pick up driver dropped the envelope in the mail box. According to the testimony of the credit manager, the plaintiff said that his copy of the contract had been misplaced. Plaintiff's testimony with reference to the date he received the invoice and Thermofax copy, and his testimony with reference to the date he first saw the Thermofax copy, were inconsistent and contradictory. The court was not required to believe that the Thermofax copy of the front page of the contract (part of plaintiff's Exhibit 1) was the document which plaintiff received (according to his testimony) in the mail sometime after February 3. The court could infer that the copy which plaintiff received at that time was the customer's signed copy of the contract. The judge, in announcing his decision, stated that he was "not impressed with the testimony of plaintiff," and that he was sure that plaintiff got a copy of the contract. The evidence was sufficient to support the finding that the seller delivered a copy of the contract to the buyer.

■ Appellant contends the company violated section 2982, subsection 10 of subdivision (a), in that the contract did not list therein the names and addresses of the persons to be notified in the event of repossession of the trucks. That subsection 10 (when read in connection with other parts of the section) provides that the contract shall list the names and addresses of all persons to whom the notice required under subdivision (g) [notice of intent to repossess] is to be sent. The contract did not include such a listing. It did state the name and address of plaintiff as the person liable under the contract. It does not appear that any other person was liable under the contract. Under the circumstances, the court could properly conclude that the company did not violate said subsection 10 in omitting to list in the contract the names and addressed of the persons to whom the notice required under subdivision (g) was to be sent.

■ Appellant contends that the court erred in receiving in evidence certain letters sent by the Los Angeles office of the company to the San Francisco office, and in receiving other letters sent by the San Francisco office to the Los Angeles office. The letters are interoffice communications regarding the transaction. Appellant asserts that the letters were self-serving and hearsay. Respondents assert that the letters were admissible as business records. It is not necessary to determine the question as to admissibility of the letters, for the reason that even if the court erred in its ruling, it does not appear that appellant was prejudiced thereby. ■ "[I]t is presumed on appeal that the court, sitting without a jury, did not base its finding on irrelevant evidence where there is competent evidence to support it." (*Southern Cal. Jockey Club* v. *California etc. Racing Board,* 36 Cal.2d 167-176 [223 P.2d 1].) ■ In the present case there was competent evidence to support the findings. The findings are supported by the evidence.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 17, 1962.