[Civ. No. 32060. Second Dist., Div. Five. Feb. 21, 1968]

BEVERLY HILLS FEDERAL SAVINGS AND LOAN ASSOCIATION et al., Petitioners, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; PRESTON MARTIN, as Savings and Loan Commissioner, etc., et al., Real Parties in Interest.

Richards, Watson & Hemmerling, Richard Richards, Joseph F. Brodley, Munger, Tolles, Hills & Rickershauser, Roderick M. Hills, and James N. Adler for Petitioners.

No appearance for Respondent.

Thomas C. Lynch, Attorney General, Arthur C. de Goede, Deputy Attorney General, Loeb and Loeb, and Howard L. Friedman for Real Parties in Interest.

HUFSTEDLER, J.—Petitioners seek a peremptory writ of mandamus from this court ordering the respondent superior court to set aside its order denying discovery and to issue an order compelling the real parties in interest to answer questions which petitioners have propounded by way of interrogatories and oral deposition.

Petitioners seek this discovery in connection with their action in the respondent superior court in which they seek judicial review, pursuant to section 5258 of the Financial Code, of a decision by the savings and loan commissioner ("commissioner") granting the application of Equitable Savings and Loan Association ("Equitable") to operate a branch office in Beverly Hills.

Equitable filed its application for a branch license in Beverly Hills on August 8, 1966. Notices required by section 6004 of the Financial Code were sent to other associations in the state, including petitioners. A hearing was held in connection with Equitable's application on August 30, 31 and September 1, 2, 1966, as required by section 6005 of the Financial Code. Petitioners were parties to and participated fully in this hearing.

The commissioner's decision to award Equitable a license to operate a Beverly Hills branch was rendered December 1, 1966. The license was issued to Equitable the same day.

The discovery which petitioners seek to compel relates to three alleged issues set forth in their petition for relief filed in the court below: (1) The commissioner based his decision

on secret ex parte communications with Equitable; (2) Equitable deliberately misrepresented to and concealed from the commissioner information regarding its financial condition and other material facts; and (3) the commissioner had abandoned his usual rules, regulations and instructions without notice.

Petitioners are entitled to make reasonable use of discovery devices in the proceedings below, limited only by the requirement that their inquiries be relevant to the subject matter of their cause of action. (*Greyhound Corp.* v. *Superior Court* (1961) 56 Cal.2d 355, 372 [15 Cal.Rptr. 90, 364 P.2d 266]; *West Pico Furniture Co.* v. *Superior Court* (1961) 56 Cal.2d 407, 416 [15 Cal.Rptr. 119, 364 P.2d 295].) The discovery statutes vest wide discretion in the trial court in granting, denying or limiting discovery. The trial court's rulings will not be disturbed on appeal, absent a showing that its discretion was abused. (*Greyhound Corp.* v. *Superior Court, supra,* 56 Cal.2d at p. 380.)

### Scope of Judicial Review in Administrative Mandamus

The subject matter of nonapplicant petitioners' administrative mandamus petition, to which the discovery must be relevant, is judicial review of proceedings before the commissioner in a branch license application case. The subject matter is coextensive with the scope of such permissible judicial review.

The scope of review available in an action for administrative mandamus is determined by the nature of the interest which a petitioner seeks to vindicate. This proposition becomes clear from a review of the history of administrative mandamus in California as it developed on a case-by-case basis.

The foundation statute is section 1094.5, subdivision (c) of the Code of Civil Procedure, which provides: ''Where it is claimed that the findings are not supported by the evidence, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence; and in all other cases abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record.''

The statute does not supply any definition of the ''cases in which the court is authorized to exercise its independent

judgment," and it does not purport to define either "weight of the evidence" or "substantial evidence in the light of the whole record." The meaning of these terms must be ascertained from the cases from which section 1094.5 was developed and from the later decisions applying the section.

Prior to 1936, the scope of judicial review of administrative decisions was relatively well settled: It was the "substantial evidence rule" invoked by filing a writ of certiorari to review the administrative decision. But the California Supreme Court's decision in 1936 in *Standard Oil Co.* v. *State Board of Equalization,* 6 Cal.2d 557 [59 P.2d 119], changed all that. The use of certiorari was abolished and the scope of review was drastically altered. The court reasoned that certiorari would lie only to review judicial acts, that administrative agencies could not constitutionally exercise judicial powers, and therefore certiorari could not be used to review administrative decisions. The court thus created a procedural vacuum. Litigants next attempted prohibition, but the court slammed the door on prohibition as firmly as it had upon certiorari. (*Whitten* v. *State Board of Optometry* (1937) 8 Cal.2d 444 [65 P.2d 1296, 115 A.L.R. 1].) The condition was partially rectified by the court in *Drummey* v. *State Board of Funeral Directors & Embalmers* (1939) 13 Cal.2d 75 [87 P.2d 848], when the court decided that mandamus would lie to review administrative decisions. But the court in the *Drummey* case disabused everyone of the notion that "administrative mandamus" was "certiorari" under an assumed name, because the court expressly rejected the "substantial evidence rule" which was an integral part of the certiorari remedy. Lingering hope that the door had been opened a crack by the court's decision in *McDonough* v. *Goodcell* (1939) 13 Cal.2d 741 [91 P.2d 1035, 123 A.L.R. 1205], holding that the substantial evidence rule was untouched in a case involving denial of an application for a license, appeared dashed by the court's decision three years later in *Laisne* v. *State Board of Optometry* (1942) 19 Cal.2d 831 [123 P.2d 457]. The *Laisne* case held that not only was the trial court to exercise its independent judgment on the facts, but it should conduct a "trial de novo," in the sense of a complete retrial of the facts upon which the administrative decision was based. Within a year, the court disavowed the trial de novo concept advanced in the *Laisne* case and substituted a more qualified form of review in

its decision in *Dare* v. *Board of Medical Examiners* (1943) 21 Cal.2d 790 [136 P.2d 304], a license revocation case.

The difficulty in harmonizing *Standard Oil, Drummey, McDonough, Laisne* and *Dare* led the California Judicial Council in 1944 to obtain legislation to clarify the law. The result of their efforts was the enactment of section 1094.5 of the Code of Civil Procedure, which is in substance a codification of the principles expressed by the court in the *Dare* case.

Because it is a codification of the *Dare* case, bringing with it the gloss of its history, section 1094.5 leaves unresolved where the line should be drawn between "independent judgment" cases and "substantial evidence" cases.[1] It is incumbent upon this court to attempt to apply the distinctions which the Supreme Court in its opinions appears to have drawn between kinds of administrative decisions reviewable and the scope of review applicable to each. Only thus can we properly determine the legitimate bounds for discovery in the present proceeding.

Under the *Dare* case and its progeny, the general rule appears to be that the decisions of all statewide agencies exercising quasi-judicial power are subject to "limited trial de novo" by the superior court. There are, however, two "exceptions" to this rule: (1) Administrative agencies exercising quasi-judicial power pursuant to authority derived from the Constitution are immunized from the holding of the *Standard Oil* case;[2] and (2) administrative decisions of statewide agencies which are not judicial in character or which, if judicial in character, do not affect a vested right or interest, are

---

[1]Some of the members of the court have indicated their restiveness with this state of the law. See e.g., Mr. Justice Traynor's dissenting opinion, with which Mr. Justice Edmonds concurred, in *Southern Cal. Jockey Club, Inc.* v. *California Horse Racing Board* (1950) 36 Cal.2d 167, 178 [223 P.2d 1]. Mr. Justice Traynor observed: "Manifestly, the doctrine of *McDonough* v. *Goodcell* is at odds with the principles of judicial review announced by the majority of this court in the *Dare* and *Moran* cases. If the majority opinion herein is to be consistent with those principles, it should overrule *McDonough* v. *Goodcell*. Otherwise, the *Moran, Dare, Laisne, Drummey* and *Standard Oil Co.* cases must be overruled." (*Id.* at p. 182.) Efforts both legislative and judicial to clarify and settle the law in this area have been and will be substantially frustrated until the Supreme Court, in recognition of the erosion of the foundation of the *Standard Oil* case, clearly overrules it and the *Laisne* case.

[2]E.g., *Covert* v. *State Board of Equalization* (1946) 29 Cal.2d 125 [173 P.2d 545]; *Boren* v. *State Personnel Board* (1951) 37 Cal.2d 634 [234 P.2d 981]; *Shepherd* v. *State Personnel Board* (1957) 48 Cal.2d 41 [307 P.2d 4].

likewise immune from the *Standard Oil* case. The rationale is that in neither circumstance is the constitutional inhibition discovered in the *Standard Oil* case present. Since the commissioner herein does not derive his power from the Constitution, we are here concerned only with the second "exception."

The "exception" was first carved out by the court in *McDonough* v. *Goodcell, supra,* 13 Cal.2d 741.[3] In that case the petitioners applied for mandamus to compel the respondent insurance commissioner to issue to petitioners a permit to conduct a bail bond business. The effect of the denial of a permit was to foreclose petitioners from carrying on a business in which they had been for many years engaged. The court held that the denial of an application for a permit by a statewide agency did not involve an exercise of judicial power by the agency, but merely the exercise of administrative discretion. Therefore, the court concluded, the applicable scope of judicial review was the substantial evidence rule. The court distinguished the *Drummey* decision on the ground that *Drummey* involved the revocation of a license, a vested right, and the revocation process was a "judicial" one, whereas the *McDonough* case involved a denial of a permit, a nonvested right, and, apparently for that reason, an administrative rather than a judicial act. The distinctions are difficult to follow because in both cases the practical results were identical. Petitioners were required in both cases to terminate going businesses. The court's position that *McDonough* petitioners' rights were not "vested" because the bail bond business was subject to regulation under the police power is hard to reconcile with its view that the *Drummey* petitioners' right to carry on the funeral business was not similarly situated.[4]

---

[3]The word "exception" is used pejoratively because at the time the *McDonough* case was decided it was by no means clear which was the general rule and which was the exception. In its opinion in the *McDonough* case the court said that the *Drummey* case was "an exception to the general rule in *mandamus* proceedings," and, as such, should be confined to the situation therein appearing. (13 Cal.2d at p. 753.) Yet with the decision in the *Laisne* case in 1942, the *McDonough* rule became the exception and the *Drummey* rule became the law of general application.

[4]Mr. Justice Traynor, dissenting in *Southern Cal. Jockey Club, Inc.* v. *California Horse Racing Board, supra,* 36 Cal.2d at p. 180, and Mr. Chief Justice Gibson, dissenting in *Laisne* v. *State Board of Optometry,* 19 Cal.2d 831, at p. 869 [123 P.2d 457], have both insisted that the majority of the court had drawn a distinction without a difference.

■ Nevertheless, the distinction established in the *McDonough* case has since been preserved: Decisions of administrative agencies revoking licenses or denying the exercise of "vested" rights are subject to limited trial de novo by the superior court; decisions of administrative agencies denying applications or permits which do not constitute "vested rights" are subject to the restrictive "substantial evidence" review. Thus in *Southern Cal. Jockey Club, Inc.* v. *California Horse Racing Board, supra,* 36 Cal.2d 167, the majority of the court held that the denial of a permit to construct a new race track was not a "judicial act" and did not involve a deprivation of any vested right. On the authority of the *McDonough* decision, the court applied the substantial evidence rule.

The court is still in the process of developing on a case-by-case basis the rights which fall into the "vested" category and the rights which do not. In *Thomas* v. *California Employment Stabilization Com.* (1952) 39 Cal.2d 501 [247 P.2d 561], the court decided that an applicant for unemployment insurance benefits had such a vested right as to require limited trial de novo review. But the applicant for old age benefits does not have any vested right to such benefits. (*Bertch* v. *Social Welfare Dept.* (1955) 45 Cal.2d 524 [289 P.2d 485].)[5] In neither case does the court explain why one is vested and the other is not.

■ The present case, of course, involves not the revocation, but the granting of a license. The action is brought not by the applicant for the license, nor by a competing applicant for a license,[6] but by other savings and loan associations with existing offices or branch offices in Beverly Hills. The sole interest which petitioners herein seek to protect is their interest in being free from the additional competition to which Equitable's Beverly Hills branch office may subject them. The threat which this competition poses to petitioners' possible future profits does not give rise to a legally cognizable interest in petitioners.[7] By no stretch of imagination can petitioners'

[5] *Accord, County of Contra Costa* v. *Social Welfare Board* (1962) 199 Cal.App.2d 468 [18 Cal.Rptr. 573].

[6] Great Western Savings & Loan Association, which had filed a competing application with the commissioner for a license to operate a branch in Beverly Hills, is not a party to the proceedings in this court. It is therefore unnecessary for us to consider how, if at all, the rights of such an association would differ from those of petitioners herein.

[7] The issue of petitioners' standing to maintain the present proceeding is not raised before this court. Suffice it to say that the requisite standing to maintain an action for administrative mandamus under Code of Civil

interest in being free from competition be deemed a "vested" right. Petitioners do have a vested right in being permitted to continue operating their existing savings and loan businesses. That right, however, is not here threatened.

It follows, of course, that the maximum relief petitioners are entitled to in the superior court is for that court to determine whether or not the commissioner's actions are supported "by substantial evidence in the light of the whole record."

Section 1094.5 of the Code of Civil Procedure uses the words "substantial evidence in the light of the whole record" to describe the scope of review in those cases where the petitioner is not entitled to a limited trial de novo. The question remains whether the superior court must review the "whole record" to determine whether there is substantial evidence, or whether the substantiality of the evidence is determined by isolating and considering only the evidence supporting the administrative decision and not that conflicting with it. The latter procedure is the required one. In other words, the superior court, in an administrative mandamus proceeding, must apply the "substantial evidence" rule in the same manner that that rule is applied by appellate courts in California in reviewing decisions of trial courts.

This is true despite the reference in section 1094.5 to the "whole record."[8] The definitive holding upon the point is _Thompson_ v. _City of Long Beach_ (1953) 41 Cal.2d 235 [259 P.2d 649]. Mr. Justice Spence, speaking for the court, enunciated the rule in language identical to that used in the scope of review of trial court decisions by appellate courts: "[Q]uestions as to the weight and sufficiency of the evidence, the construction to be put upon it, the inferences to be drawn therefrom, the credibility of witnesses commensurate with

Procedure section 1094.5 exists where, as here, the petitioner was a party to the administrative proceeding which the court is to review. Thus "party status" in the administrative proceeding is equated with the "beneficial interest" required by Code of Civil Procedure, section 1086. (_Temescal Water Co._ v. _Department of Public Works_ (1955) 44 Cal.2d 90 [280 P.2d 1]; _Covert_ v. _State Board of Equalization_ (1946) 29 Cal.2d 125 [173 P.2d 545]; _Matson Terminals, Inc._ v. _California Emp. Com._ (1944) 24 Cal.2d 695 [151 P.2d 202]; _Bodinson Mfg. Co._ v. _California Employment Com._ (1941) 17 Cal.2d 321 [109 P.2d 935].)

[8]Netterville in his article, _The Substantial Evidence Rule in California Administrative Law_, 8 Stan.L.Rev. 563 (1956), explores the problem thoroughly. His enthusiasm for the present interpretation is limited, but he recognizes that the law enunciated by the California Supreme Court is clear.

their conduct and manner of testifying, and the determination of conflicts and inconsistencies in their testimony are matters for the trial court [in context the court is referring to the administrative agency as the 'trial court'] to resolve.'' (41 Cal.2d at p. 246.)

The *Thompson* decision means that in the proceedings below, the superior court must consider the evidence in the light most favorable to the real parties in interest, must give them the benefit of every inference, and must resolve all conflicts in the evidence in support of the commissioner's decision.

### Claimed Misrepresentations of Equitable

In their amended administrative mandamus petition, petitioners alleged that Equitable ''prevented a fair trial at the hearing'' by presenting financial statements and records which omitted described pertinent facts adversely affecting Equitable's financial condition and by withholding certain other information having a similar effect upon its financial condition.[9] Taken separately or together the allegations charge Equitable with intrinsic fraud in proceedings before the commissioner. Even if the hearing could be equated with a trial in an adversary proceeding (which it cannot), a reviewing court must refuse to reappraise the credibility of witnesses or to reexamine documentary evidence claimed to be false. (E.g., *People* v. *DePaula* (1954) 43 Cal.2d 643, 649 [276 P.2d 600].) Petitioners appeared and vigorously contested the issuance of the license to Equitable on the very ground, among others, that Equitable was financially unsound. The trial court did not abuse its discretion in refusing discovery relating to petitioners' claim that Equitable suppressed evidence, presented perjured testimony or false documents in the hearing in which petitioners fully participated. The resolution of these matters rested entirely within the province of the commissioner, and his decision thereon cannot be subjected to judicial review. The discovery sought in this connection is unrelated to the subject matter of the petition for administrative mandamus.

### Claimed Misconduct of the Commissioner

Petitioners' allegations of misconduct by the commissioner fall into two broad categories: (1) alleged irregularities

---

[9]E.g., petitioners charged Equitable with ''concealing or materially misrepresenting the true status of Equitable's delinquent loans after June 30, 1966;'' ''presenting a financial statement which was false by reason of the deliberate omission of a contingent liability of $1,342,000.''

which are claimed to have occurred during the course of the hearing and which are a part of the administrative record, and (2) alleged misconduct based on matters which are outside the administrative record.

Into the former category fall the following allegations of the petition for administrative mandamus: (a) refusal of the hearing officer to order a particular witness to appear upon petitioners' request; (b) refusal of the hearing officer to order production of an agreement between an officer of Equitable and certain of its shareholders; (c) refusal of the hearing officer to order production of a specific loan file; (d) conduct of the hearing officer in "foreclosing further inquiry and production of evidence as to . . . the prior background and financial structure of . . . Equitable and . . . the above-mentioned . . . loan;" (e) failure of the commissioner to act upon Equitable's application within the time limit specified by section 5252 of the Financial Code, and failure to notify petitioners of his intention to extend such time limits; and (f) failure of the commissioner to make findings with that amount of specificity which would satisfy petitioners.

Conspicuously absent from petitioners' first three claims of misconduct is any allegation that the hearing officer refused to issue either a subpoena to produce the witness or a subpoena duces tecum. At the most, petitioners claim misconduct based upon a refusal of the hearing officer to compel the production of a witness and of documents, respectively, on the hearing officer's own motion. The fourth claim of misconduct relates to a limitation upon the scope of inquiry accorded to the petitioners. Petitioners cite no authority, and we know of none, to support a claim that the commissoner, in conducting a hearing on a license application, is obliged to permit unlimited inquiry by objectors into an applicant's financial affairs or that the commissioner is obliged to follow the rules of evidence which are appropriate in a trial. The trial court did not abuse its discretion in refusing to permit discovery designed to elicit evidence to support those groundless claims of error.

The final averments concerning claimed misconduct of the commissioner based on the administrative record relate to the failure to give petitioners notice of an alleged extension of time in acting upon Equitable's application and the failure to make findings other than those following the statutory language. We have no occasion to consider the merits of peti-

tioners' pleading in these respects because none of the foreclosed discovery remotely relates to those averments.

Petitioners fire their major ammunition at the foreclosure of discovery concerning claimed misconduct of the commissioner in receiving information about Equitable outside the administrative hearing. Petitioners state that the commissioner improperly relied upon "secret, *ex parte* communications" in granting Equitable's application.[10]

Petitioners misconceive the statutory scheme of which the hearings are a part and the scope of judicial review available to them as objectors in this administrative mandamus proceeding. Petitioners assume that the statutory hearing required by section 6004 of the Financial Code is analogous to a trial in an adversary proceeding, that the commissioner is subject to the same limitations in the receipt of evidence as is a judge or a referee, and that they, as objectors, have the

[10]Paragraph XV of the amended petition states: "Petitioners are informed and believe, and additional evidence established through discovery will show, that his decision with respect to the application of Respondent Equitable was based substantially upon Respondent Commissioner's taking official notice of the details of certain transactions between Thomas Gregory, the former chief executive of Equitable, and Equitable and/or principal shareholders of Equitable, of certain details concerning the Hemet loan, and of other materials and/or communications which were not in evidence at the hearing. No reference was made during the hearing to the materials of which notice was taken and petitioners were thereby deprived of the opportunity to participate in the hearing with regard to these matters which have an important effect upon the soundness of Respondent Equitable's financial program and this Court is denied a complete record which will permit it to determine if Respondent Commissioner properly utilized the materials in his records of which he took official notice. Petitioners have thereby been effectively denied their right of review provided by Section 5258 of the Financial Code. These communications upon which the final decision to grant the application of Respondent Equitable was based included communications between the Respondent Commissioner, then in office, personally, and representatives of Respondent Equitable, in direct violation of the prohibition against such ex parte communications contained in Section 154 of the Commissioner's Regulations, 10 Cal. Admin. Code 154. These communications, none of which were in evidence at the administrative hearing or were otherwise a part of the public record, were secret and ex parte, occurred both before and after the hearing, and in substance included, inter alia, permitting Respondent Equitable to make a secret amendment to its application in violation of Section 148(b) of the Commissioner's Regulations, 10 Cal. Admin. Code 154 (a copy of which secret amendment is attached hereto as Exhibit F and by this reference incorporated herein); and permitting Equitable to obtain issuance of a license to open its branch prior to the time the objectors of record at the administrative hearing had received notice of the administrative decision and thus to confront the reviewing court with an accomplished fact in order thereby to frustrate and defeat objectors' legal rights to obtain immediate relief from the Superior Court by means of a temporary stay order."

same rights at the hearing and upon review as would litigant adversaries.

 Section 5250 of the Financial Code delegates to the commissioner the administration and enforcement of the Savings and Loan Association Law (Fin. Code, § 5000 et. seq.). Among the wide range of duties entrusted to him is the duty to investigate savings and loan associations and to make reports to the Governor about the financial condition of such associations. (E.g., Fin. Code, §§ 5203, 5250, 5251, 5350, 5509, 6001, 6002, 8700 et seq., 8750 et seq., 8800 et seq.) The purpose of the hearing required by section 6004 is to assist the commissioner in gathering information to add to that data which he has already secured from the application and from his other investigatory sources to assist him in his ultimate determination to grant or deny an application for a branch license. A hearing is not set at all if the commissioner decides that an applicant has not made a prima facie showing of eligibility for a branch license.[11]

The investigatory purpose of the hearing is implicit in the provisions of section 6005 of the Financial Code, stating: ''Any person may appear at such hearing in person or by agent or attorney, and orally or in writing show cause why the branch license should not be issued upon any relevant ground.'' An objector who is not himself an applicant and who appears to show such cause takes a position adverse to the applicant, but he is not an adversary party in the sense in which that terminology is used in litigation. The commissioner (or his surrogate, a hearing officer) in his conduct of the hearing occupies a dual role as a quasi-judicial officer and as an investigatory executive agent. That the commissioner performs judicial functions in taking evidence does not, however, mean that he is bound by the rules controlling judicial officers. He is not a disinterested referee whose decision-making power must be confined to the hearing record.

 All savings and loan associations must submit to the commissioner the financial reports required by sections 8700

---

[11]Financial Code, section 6004: ''Upon receipt of an application for a branch license, the commissioner, *unless he finds that such application must be denied pursuant to this chapter*, shall give written notice to each association existing in this State that an application for the issuance of a branch license has been made. The notice shall state the name of the association . . . , and the time and place that a hearing will be held.'' (Italics added.)

et seq. and 8750 et seq., irrespective of whether or not an association has a pending application for a branch license. These reports are ''secret, ex parte communications'' to the commissioner. The statutory scheme obviously contemplates that the commissioner shall take into account the information contained in such reports in deciding to grant or deny a particular application.

Petitioners cite 10 California Administrative Code, section 154,[12] for the proposition that the commissioner's decision must be based solely on the hearing record and reason therefrom that all secret, ex parte communications between an applicant and the commissioner are forbidden.

Regulation 154 must be understood, however, in the context of the statutory scheme it was promulgated to implement. Regulation 154 aims not at all ex parte communications but only at such as might constitute ''improper influence.'' It aims at communications *to* the commissioner, but says nothing about communications *from* the commissioner to the applicant. Such communications might well be necessary in the course of the commissioner's investigatory activities. Surely responses to any inquiries initiated by the commissioner in the course of his investigation could not be said to fall within the purview of regulation 154. The requirement in regulation 154 that the determination be based on the hearing record must be read in conjunction with regulation 145, which sets forth the purpose and scope of the subchapter in the regulations dealing with applications and hearings. Regulation 145 contains the proviso: ''A decision upon each application will be made by the Commissioner *after weighing all relevant factors* pursuant to

[12] ''It is essential that pending cases be determined upon the hearing record and that the quasi-judicial character of the Savings and Loan Commissioner and his hearing officers be fully recognized and protected. In such cases, after the filing of an application and prior to the decision (a) It is improper that there be any private communications *on the merits* of the case *to* the Savings and Loan Commissioner, or to the hearing officer in the case, by any person, either in private or public life, unless provided for by law. (b) It is improper that there be any effort by any person interested in the case to sway the judgment of the Savings and Loan Commissioner by attempting to bring pressure or influence to bear upon the Savings and Loan Commissioner or the hearing officer.'' (Italics added.) (Regulation 154.)

The commissioner's regulations have been modified somewhat since the pleadings herein were filed. Present regulation 153 deals with improper influence. The first sentence of regulation 154 above is omitted therefrom. We will continue to refer to the numerical designations used by the parties and the regulations in effect at the time Equitable's application was under consideration.

the specific requirements of the Savings and Loan Association Law and other applicable statutes." (Italics added.) 
Section 5509 of the Financial Code, of course, requires a complete investigation by the commissioner of "all facts connected with the formation of the proposed association."

 The essence of the entire statutory scheme is to insure that the maximum amount of information will be made available to the commissioner to enable him to exercise intelligently the broad discretion he has been granted. This scheme in no way prejudices objecting associations in the position of petitioners. In the context of the Savings and Loan Association Law, "ex parte" cannot be equated with "evil" or "corrupt." Nor can the commissioner's reliance upon ex parte communications be said to deprive petitioners of a fair hearing absent allegations that the commissioner acted fraudulently. The allegations of the administrative mandamus petition are a country mile away from charging the commissioner with fraud.

Petitioners cite a number of cases for the proposition that an administrative body is strictly limited to evidence in the hearing record.[13] The cited cases do not bear out petitioners' contentions. None deals with a regulatory scheme such as that present herein.

 The commissioner's reliance upon ex parte communications does not deprive these petitioners of any rights to which they are entitled, and they are in no position to complain that the proceedings were unfair to them. No vested rights of theirs are impaired. Petitioners' function is not to

---

[13]*English* v. *City of Long Beach* (1950) 35 Cal.2d 155 [217 P.2d 22, 18 A.L.R.2d 547], and *La Prade* v. *Department of Water & Power* (1945) 27 Cal.2d 47 [162 P.2d 13], both dealt with dismissal of civil service employees—vested rights cases. *Universal Consol. Oil Co.* v. *Byram* (1944) 25 Cal.2d 353 [153 P.2d 746], was an application for reduction of tax assessment—a vested rights case, with the burden of proof on applicant. *Olive Proration etc. Committee* v. *Agricultural etc. Com.* (1941) 17 Cal.2d 204 [109 P.2d 918], is totally inapposite. The case decided only that the commission there involved had not been given the statutory power to change a decision it had previously rendered following a hearing. *Henry Cowell Lime & Cement Co.* v. *Industrial Acc. Com.* (1930) 211 Cal. 154 [294 P. 703, 72 A.L.R. 1118], and *Carstens* v. *Pillsbury* (1916) 172 Cal. 572 [158 P. 218], both deal not only with awards of workmen's compensation insurance benefits against the petitioning employer, but involve a situation where the petitioning employer had neither been made a party to the case at the time the hearing was held, been present at the hearing, nor been represented therein. Both cases, therefore, not only involve vested rights but are "lack of notice and opportunity to be heard" cases.

defend their own legally cognizable interests, but to enlighten the commissioner by bringing to his attention at the hearing facts within their knowledge about which he may be uninformed. The legislative conception of the hearing in its context is that justice will be done if the commissioner is fully informed—whether the objectors are or not.

The subject matter of the administrative mandamus petition is limited to a review of the administrative record to permit the court to decide whether on that record the granting of the license was supported by substantial evidence. Evidence outside that record cannot be judicially reviewed. Even if such evidence could be considered, it would necessarily either support the admitted evidence or contradict it. Supporting evidence is of no moment to the petitioners, and contradictory evidence is of no moment to the court in this proceeding because in applying the substantial evidence rule the court must ignore conflicts in the evidence. The sufficiency of the evidence to support the commissioner's decision for the purpose of judicial review sought by an objector stands or falls on the administrative record.

It follows that the trial court did not abuse its discretion in refusing to permit the requested discovery.

The petition for a peremptory writ of mandamus is denied. The alternative writ of mandamus is discharged.

Kaus, P. J., and McCoy, J. pro tem.,* concurred.

A petition for a rehearing was denied March 20, 1968, and petitioners' application for a hearing by the Supreme Court was denied April 17, 1968.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.